CASE 65.—ACTION BY LUCILLE H. PAINE'S GUARDIAN AND OTHERS AGAINST THE CALOR OIL & GAS COMPANY TO RESTRAIN DEFENDANT FROM LAYING GAS MAINS IN A COUNTRY HIGHWAY WITHOUT PLAINTIFF'S CONSENT AS THE OWNER OF THE FEE.—June 26, 1907.

# Paines Gdn., &c. v. Calor Oil & Gas Co.

Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

SHACKELFORD MILLER, Judge.

From the judgment denying relief, complainants appeal.—Reversed.

Eminent Domain—Highways—Rights of Fee Owners—Additional Servitude—Gas Mains.—The laying of gas mains in a country highway, in which the fee was in the abutting owners, by a private corporation engaged in selling its natural and manufactured gas to the public, which it desired to conduct through such mains from its wells and plant to a city, constituted an additional servitude, to which the highway could

not be subjected by the mere consent of the fisca' court of of the county, without the consent of such fee owner.

JOHN C. STROTHER for appellants.

HUMPHREY, HINES & HUMPHREY for appellee.
No briefs, record out of office.

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR—
Reversing.

The fiscal court of Jefferson county granted to appellee the right to lay its pipe lines for conveying natural gas from its field in Meade county to Louisville, Ky., under a certain public highway in the county. The county owned only the easement for the public travel in the highway. The fee was owned, as to particular parts of it, by appellants, the abutting owners. The question for decision in this case is whether the use of the highway by appellee's gas line is an additional servitude upon appellants' estate, and argument is made that it is not, because appellee is a public service corporation, whose business it is to bring natural gas to the metropolis of the State, to be sold there for illuminating and heating purposes; that, as the public has acquired the highway for one public purpose, it may be used for all public purposes of a kindred and similar kind. As tending to sustain the doctrine, it is cited that a steam railroad on a public highway is not an additional servitude (Lexington & Ohio Railroad Co. v. Applegate, 8 Dana, 289, 33 Am. Dec. 497); that an electric street railway is not an additional servitude upon a city street (Louisville Bagging Manufacturing Co. v. Central Passenger Railway, 95 Ky. 50, 23 S. W. 592, 15 R. 417, 44 Am. St. Rep. 203); that an electric railway is not an additional servitude upon a coun-

ty highway (Georgetown & Lexington Traction Co. v. Mulholland, 76 S. W. 148, 25 Ky. Law Rep. 578); and that a telephone line is not an additional servitude upon a county highway (Cumberland Telephone & Telegraph Co. v. Avritt, 85 S. W. 204, 27 Ky. Law Rep. 394). Some point is made in argument that the doctrine of additional servitude upon rural public highways is, in some jurisdictions, different from that of additional servitude upon urban highways; but we do not deem a consideration of that question necessary in this case. In all the cases above cited, the fundamental fact was that the additional servitude was of the same kind in effect as the original servitude. In each instance, travel by the public was the main fact. It was pointed out that, as the original easement was obtained to accommodate travel by the general public, new means of travel, as by the adoption of vehicles not known or in use when the easement was first granted, were included as much as were those then known. In any event, the public was being served in the matter to the extent originally contemplated. Whether the public went afoot, traveled upon horseback, or in chaises, or in stages, or cars propelled by steam or electricity, was all one. The public was traveling over the route dedicated, and was in the use of the easement granted to it. The analogy of telephone and telegraph lines to such travel is not so clear, as is evidenced by the different conclusions on the subject reached by the courts of different jurisdictions. Still it is ascertained that the analogy exists. As was pointed out by this court in Cumberland Telephone & Telegraph Co. v. Avritt, supra: "The telephone takes the place of the private messenger. The transmission of messages by telephone as a business of a public character, which is conducted under public con-

trol in the same manner as the carriage of persons or property.''

The question is not made to turn at all upon the character of the person using the new means, but upon the quality of the use. Appellee is incorporated to do the business of furnishing gas for illuminating and heating purposes in the city of Louisville. It either manufactures gas, or gathers it from the subterranean deposits of natural gas. In either event, it must be confined, as well as conducted to the places of consumption. Appellee serves the public in such matters, but in no different sense from the butcher or coal dealer, for gas is no more essential to the public than meat or coal. Could it be truly asserted that the coal dealer might build a tramroad along and upon a public highway to enable him to haul his coal to the public market from his mine, so that thereby he might serve the public? If he were building and operating a tramroad on which the coal of all shippers who desired to use it would be transported, the case would seem to come within the line of authorities noted above. In the case at bar, appellee is not a common carrier. It does not propose to carry gas for everybody—the owners of all wells along its line—but it proposes to carry its own gas alone to the market. The carrying of its gas is a private enterprise, just as would be the coal dealer carrying his coal to market. The analogy is attempted to be extended by the argument that, if the coal dealer was entitled to haul his coal by wagons, or, if practicable, if appellee hauled its gas in transportable retorts, there would be no question of their right to use the highway for such purposes; and as the means adopted is an improved one, and really

imposes a less burden upon the highway, and therefore upon the fee, it ought not to be excluded from the easement. But it is not true that, because a man has a right to haul his wares over a highway, he may erect thereon permanent means of transporting them. A logger would not be allowed, for example, to erect skids along the highway to more easily draw numerous logs over it, instead of hauling them in wagons; nor do we apprehend that a coal miner, or any manufacturer, would be permitted to build a tramway upon and along the highway to expedite and cheapen the transportation of his product, although to do so would tend to relieve the highway of a different and lawful means of travel by him for its movement. That is more than its use. It is the perpetual occupancy; not to the exclusion, or even hindrance, of the public, it may be true, but, nevertheless, it is the taking possession of the land, to the exclusion, to that extent, of the owner and all others for any purpose whatever. As pointed out, it is not for use by the public, as are electric and steam railways, or even telephone and telegraph lines; but it is the exclusive use of the part actually occupied by the individual for his own convenience. That he is engaged in serving the public in the sale of his wares does not affect the question. The test in these matters is this: Is he serving the public by carrying the public, or carrying his wares, in his contrivance which he is setting up on the public highway under the guise that it is a part of the public easement?

The question at the bottom is not so much whether the public is not in some way, directly or indirectly, benefited by the matter (for it may be safely assumed that it is benefited by any enterprise that adds

to its marketable stock of the necessities of life), but have the legal rights of the individual been invaded? The greatest safety of the rights of all is frequently found to be in the due respect of individual rights. The owner of the fee, by contract or legal compulsion, has granted an easement to the public for its travel over his land. The public must be confined to the route selected, as well as to legitimate public uses of the kind embraced in the easement. To allow the public highway to be taken for every use which was of a public nature, simply because it had been acquired by the public for a particular use, would be to add to the contract of the parties, and to deprive the citizen of his property without compensation. Appellee's conduit is no more a public use than its retorts, pumping stations, or office buildings. It in a sense, and in the same sense, serves the public by the use of all these appliances. Could an easement granted to the public for a tollhouse on a turnpike road be converted by the consent of the public authorities, but without the consent of the owner of the fee, into the right to occupy the lot with a gas retort, or a pumping station for the appellee's private use? It is pointed out that the streets of a city may be used, in virtue of the original easement in their dedication as public streets, in laying sewers and gas mains beneath them, and that the owners of the fee would not in such event be entitled to compensation, as for an additional servitude. While the right of the public in public highways in rural and urban communities is in many particulars the same, still in many others they are not. Sewers in populous cities are a public necessity. The public use them as avenues for disposing of filth. They partake, in their

particular use, of every feature of a public highway
in its particular uses. No other place could so well
and so practically be adapted to use for sewers as
beneath the streets. They have been always so used
since public sewers were known. So, when an ease-
ment is granted to a city for opening up a street, it
includes by every implication the right to use the
street for all such public purposes as streets are
generally used for. But, suppose the city desired
to carry its sewerage to a considerable distance be-
yond its limits, and therefore had to extend its sew-
ers for many miles into the country. Would it have
the right to use the public highways of the county for
the purpose as an incident of the original servitude?

Now, as to gas mains: Public lighting is also a
public necessity in cities. Not so in the country. Pub-
lic lighting must, from its nature, be upon the public
streets. Hence it is implied in the grant of land for
use as a street in a city that the city may also light
it, and, in order to light it, it may use it for laying
gas mains. The gas so distributed may also be used
for private lighting, but such private lighting is for
the enjoyment of the inhabitants of the city. They
all may use it, and hence all get the benefit of the
use of their public streets. But there is neither cus-
tom nor exigency nor consideration for the appro-
priation of a rural highway to the public uses of a
city of a nature that are peculiar to the city alone,
and which the rural community cannot share. There
is therefore no such implication in the dedication by
the owner of his land to the public use for a highway
in the county, as there is in the city, in so far as
sewers and gas mains are concerned.

Following the reasoning of this opinion, and the
case of Ward v. Triple-State Natural Gas & Oil Co.,

74 S. W. 709, 115 Ky. 723, 25 R. 416, the judgment of the circuit court, holding that appellee acquired the right to occupy the bed of the road for its gas line, without the consent of the owner of the fee, was erroneous, and is reversed. The cause is remanded for a judgment in conformity herewith.