## Riley v. L. H. & St. L. Ry. Co.

(Decided February 3, 1911.)

### Appeal from Daviess Circuit Court.

1. Eminent Domain—Condemnation for Branch Railroad.—Private property cannot be taken for private purposes. It is only when the taking will be necessary for a public use that the power of eminent domain can be exercised. Land cannot be condemned to enable a railroad to build a branch from its main line to a factory or business enterprise solely for the convenience and benefit of the latter however great an advantage the branch might be to it.

2. Private Corporation—Test of Right to Condemn Land.—The business in which a corporation is engaged cannot add to or take from its right to condemn. The test to be applied in every case is—will the property taken be for a public use and necessary for such use?

3. Burden of Proof.—The burden is upon the private corporation seeking to condemn land to establish that the property sought to be taken will be needed for a public use.

4. Construction of Statute.—Section 769 of the Kentucky Statutes, authorizing railroad companies to build spurs, switches and tracks, does not give railroad companies the right to take private property for private purposes without the consent of the owner. It was only intended to enable railroad companies to acquire by consent or by condemnation in a proper state of case property upon which it might construct and operate a branch road.

5. Pecuniary Interest of Private Individual is not Conclusive That Improvement Will be for Private Purpose.—The fact that a single industry is vitally interested in and will receive special benefit from the establishment of a branch road, does not deprive the improvement of the public character necessary to authorize condemnation proceedings.

6. Public Use—What is.—An improvement need not be used by or necessary to the use of the public generally, or any considerable number thereof; the constitutional requirement will be satisfied if all the public desiring to use it have the right to do so upon the same terms and conditions, although only a few may choose to avail themselves of the opportunity.

7. Public Use—Length of Road.—Nor is the length of the road on the places between which it runs an essential inquiry.

8. Particular Facts.—Of each case must be looked to in determining whether or not the use is for the public and will be necessary.

9. Railway Company Cannot Discriminate Between its Patrons.—It must serve all alike, and cannot give any exclusive privileges or preferential rates.

10. Dedication to the Public.—Where the owners of a distillery in whose premises a branch road will terminate testify that the public may have the right of ingress and egress over the property to the station or facilities that may be provided on their premises for the reception and delivery of freight, this will be treated as a dedication by the owners of the distillery to the public for this purpose.

11. Advancement of Money by Private Corporation to Build Road.— The fact that a corporation interested in the construction of a branch road agrees to lend to a railroad company the money to build it, does not deprive it of its public character.

CLARENCE M. FINN for appellant.

R. A. MILLER and J. R. SKILLMAN for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In this condemnation proceeding, the only question presented by the record is, was the land condemned necessary for a public use?

Appellee company is a railway corporation, operating a line of railroad from Louisville, Kentucky, to Evansville, Indiana, passing through the county of Daviess and city of Owensboro therein. It sought to condemn a strip of ground owned by the appellant, Mrs. Riley, for the purpose of constructing a spur track from its main line to a point on the property of the Glenmore Distillery Company. This company owns about forty acres of land a short distance from the corporate limits of the city of Owensboro, and is one of the largest distilleries in the State. The spur track proposed to be constructed is about a half mile long, and except where it crosses the Hardinsburg road, a public highway, that runs immediately along the property line of the distillery company, it runs entirely through the lands of the appellant. The amount of damages awarded to appellant in the circuit court is not complained of, but it is insisted that the land cannot be taken because the use to which it is to be put is not a public one, or, in other words, the spur track is not necessary for a public use. This contention is

rested upon the ground that the appellee company desires to construct and operate the spur road for the exclusive use and benefit of the Glenmore Distillery Company. As the present depot of the railway company is some two miles from the distillery premises, and its line of railway a half mile from it, the construction and operation of this spur track into the distillery company's property would undoubtedly be of great benefit to it, as it would save the heavy cost of transporting its product, as well as freight received, by wagon to and from the present depot to the distillery. But, however, beneficial the construction and operation of this spur track might be to the distillery company, if it was only intended for its use, and it could not and would not be used by the public, the power of eminent domain could not be invoked to authorize the taking of the land of the appellant for the purpose of building a railroad across her property to the distillery. The only authority for the taking of private property without the consent of the owner is found in sections 13 and 242 of the Constitution, and these sections do not authorize the taking unless the property is to be applied to a public use and will be necessary for that purpose. Private property cannot be taken for private purposes, and it is plain that if no one could use this spur road except the distillery company, a private corporation, the taking of appellant's land would be the taking of private property for a private purpose, to-wit: the convenience and benefit of the Glenmore Distillery Company. Pittsburg, Wheeling & Kentucky R. Co. v. Benwood Iron Works, 31 W. Va., 710, 2 L. R. A., 680; Pere Marquette R. Co. v. Gypsum, 154 Mich., 290; Kyle v. Texas & N. O. R. Co., 4 L. R. A., 275. Nor does the fact that the land of the appellant is needed for railroad purposes and that a railroad will be constructed and operated over it, have the effect of establishing that it will be for a public use. There are what may be called public as well as private railroads—such as railroads built and used by the public generally and roads built to be used by only one or more persons or business concerns. After the main line of a railroad has been built, it often becomes a matter of importance to the railway company as well as manufacturing plants or business establishments near the line of the railroad, to have constructed from the main line into their factories or establishments switches or spurs that will cheapen and make more convenient the transportation of freight and prop-

erty to and from the main line of the railroad and their places of business. And it is in the construction of branches like this that the question of public use most frequently comes up in railroad condemnation proceedings. These branches or spurs may or may not be necessary for a public use. Whether they are or not depends on the facts of each particular case. And it often happens, as is illustrated by this case, that the line that separates a private from a public use may be a very narrow one. For, although it would seem at first impression that there ought to be little difficulty in determining whether or not a railroad was being constructed for a public or private use, there can be no doubt that the use to which it is intended to be put may be exclusively a private one, as where only one person or one factory or establishment could use the road. We may therefore with safety assume that the particular business the corporation is engaged in at the time it seeks to condemn private property is not of controlling importance in determining whether the property sought to be condemned is to be devoted to a public use. The same test in this particular is to be applied in every case in which a private corporation invokes in its behalf the right of eminent domain, and that test is—will the property taken be for a public use and necessary for such use? If it is, the business in which the corporation is engaged cannot add to or take from its right to condemn. On the other hand, if it is not, then no considerations involving private benefits or advantages will be allowed to confer the right, nor will the character of the corporation strengthen its position. And the burden will be upon the private corporation to establish that the property sought to be taken will be needed for a public use. Henderson v. City of Lexington, 132 Ky., 390 22 L. R. A., N. S., 20.

From the earliest history of the State, its public policy as expressed in constitution and statute is unalterably opposed to the invasion of private rights for private purposes. As said in Robinson v. Swope, 12 Bush, 21, in which the Court declared unconstitutional a statute authorizing the establishment of a private passway from one track to another:

"The right of a citizen to the unmolested use and enjoyment of his land rests upon a sure foundation. He may keep and use it in any lawful manner he chooses, subject only to the right of the public to take it upon compensation previously made for some public use.  *  *  *

The provision that private property shall not be taken for public use without just compensation previously made is an implied prohibition of the taking of such property for private use, either with or without compensation.''

And the principle announced in this case, which has been frequently followed and applied, we have no disposition to depart from in any particular. There can be no such thing in this State as a taking of private property for private purposes. In every case in which the power of eminent domain is invoked, it must appear that the property is desired for a public use and will be reasonably necessary for that use.

Some claim is made that section 769, Kentucky Statutes, relating to railroads and providing that:

"Any company may build such spurs, switches, tracks or branches as may be necessary to conduct its business or develop business along its line of road, and for that purpose shall have all the power and be subject to the same restrictions and liabilities as are conferred upon it for the construction of its main line.   *   *   *''

Authorizes condemnation proceedings in behalf of a railroad company when it desires to build tracks or branches that it deems necessary to develop business along its line of road. But this statute was only intended to enable a railroad company to acquire with the consent of the owner or by condemnation proceedings in a proper state of case property upon which it might construct and operate a branch road. It does not mean that a railroad company may take private property for private purposes, without the consent of the owner, under condemnation proceedings for the purpose of building spurs or branches. If it did, it would be an attempt upon the part of the legislative department of the State to grant authority in violation of the Constitution. When it comes to condemning land for the purpose of establishing branch roads, the same principles apply as do in every case in which it is sought to take private property. Greasy Creek Coal Co. v. Ely Jellico Coal Co., 132 Ky., 692.

Having the foregoing view of the principles of law applicable in cases like this, we will now proceed to inquire whether this spur road will serve a public use, and be necessary for such use. Upon this point the argument is made by counsel for the appellant that as this track runs from the main line of the railway, entirely upon the

land of the appellant, until it intersects the Hardinsburg road, which it crosses, going immediately into the land of the distillery company, that the public can not use it as they could not get to it without trespassing upon the land of the appellant, except at the place where it crosses the Hardinsburg road; and it is said that this point is unsuitable for the reception or delivery of freight, and, therefore, no person can use this spur except the distillery company. It is further said as evidencing the fact that this road was intended to be built for the exclusive use and benefit of the Glenmore Distillery Company, that it has agreed to furnish the railroad company the money with which to construct it. If it were true that this road could not be used by any person except the Glenmore Distillery Company it would undoubtedly be constructed and operated for private purposes. But, as we will presently show, it can and will be used by a considerable number of the public besides the distillery company, although it is true the distillery company is deeply concerned in its construction and operation and will receive large benefits therefrom. The fact, however, that the distillery company is vitally interested in the establishment of this branch and intends to furnish the means to construct it does not deprive it of the public character necessary to authorize the condemnation proceedings. Henderson v. City of Lexington, 132 Ky., 390, 22 L. R. A., N. S., 20. There is no public improvement, the construction of which does not benefit some persons more than others. In every instance there are certain individuals and business establishments who on account of their proximity to the road or its stations and the nature of their business, will derive special benefits from the building and operation of railroads that can not be enjoyed by the public generally. It is, therefore, plain that the mere fact that one or more persons or establishments on account of the location of their property will derive exceptional advantages from the construction of the road does not furnish any argument in support of the proposition that the road is not for a public use. If it did, no roads would be built. It is also well settled that the improvement need not be used by or necessary to the public generally, or any considerable number thereof. The constitutional requirement will be satisfied if all the public desiring to use it have the right to do so upon the same terms and conditions, although only a few may choose to avail themselves of the opportunity. As was said in Chesapeake Stone Co. v. Moreland, 126

Ky , 656, in which it was sought to condemn land to build a tramroad to a rock quarry:

"It seems entirely probable that only a few persons aside from the individual at whose instance it was established will have occasion to use this tramway; but this fact does not destroy its·public use in the meaning of the Constitution. It is not the number of people who use the property taken under the law of eminent domain that constitutes the use of it a public one; nor does the fact that the benefits will be in a large measure local enter into the question. In short, according to the generally recognized rule, the length of the public way, the places between which it runs, or the number of people who use it, is not the essential inquiry. The controlling and decisive question is: Have the public the right to its use upon the same terms as the person at whose instance the way was established? If they have, it is a public use; if they have not, it is a private one. If the owner can exercise the same kind of dominion over it as he does over other property owned by him, if he can close it up, if he can prohibit all or any part of the public from its use, then it is clear that its establishment would be private and not public; and the right of eminent domain could not be invoked in its creation."

The fact, however, that only a limited number would use it, is a pertinent inquiry in considering whether or not the improvement is necessary for a public use. And this suggestion brings to mind the utter impracticability of setting down any firm rule that can be applied in all cases when the question of the necessity of the improvement for a public use comes up. Upon this point, each case must be adjudged by its particular facts. Applying to this case the test that it must appear that the public will have the right to use the improvement upon the same terms and conditions as the distillery company, and that they will have free access to it for the purpose of such use, and furthermore that its construction must be necessary for the public use, let us now see how the case stands. At the outset, there can be no doubt that the public will have the right to use this branch road upon the same terms and conditions as the distillery company if it can obtain access to it. The railway company can not make any discrimination between its patrons in its charges or service. It will be as much under the control of the State as any other part of the railroad, and all the laws in force for the purpose of compelling equal and

fair service by the railway company to all shippers will be applicable to this branch. It can not give any ex·clusive privilege or preferential rate to the distillery company. In its dealings with the road, the distillery company will occupy precisely the same attitude as any other shipper. L. & N. R. R. Co. v. Pittsburg Coal Co.. 111 Ky., 960; Bedford & B. G. S. Co. v. Oman, 115 Ky., 369. Now, can the public, desiring to use this branch, do so? Will they have access to it? These questions are satisfactorily answered in the evidence of the president of the railway company and the president of the distillery company. They both say that the branch road may and will be projected through and beyond the premises of the distillery company, whenever the business of the company or the public justifies such an extension, and that persons desiring to receive and ship freight on this branch may enter upon the premises of the distillery company for this purpose, so long as the terminus of the road is on its property. This, we construe and hold to be a dedication by the distillery company to the public of the right of ingress and egress over its property to and from the public road or adjoining lands to the station or facilities that may be provided on the distillery premises for the reception and delivery of freight. With this right thus guaranteed there can be no question that the public who desires to use this branch road may do so upon equal terms with the distillery company. In addition to this, it is shown that at the point where the railroad crosses the Hardinsburg public road, it is the intention of the railway company to provide, and that it can and will provide, facilities for the reception and delivery of freight, and so at this point as well as in the distillery premises persons desiring to use the road can find opportunity to do so.

Coming now to the question as to the need for this branch by any person except the distillery company, which inquiry brings up the question of its necessity for a public use, the facts are: In the immediate vicinity of the distillery company there is situated two or three large manufacturing plants, with a prospect of others, and in the neighborhood quite a number of people reside. It is clearly shown by the evidence that the construction of this spur track will be a great convenience as well as benefit to the other business establishments in that locality as well as to the public in that section who may desire to receive and ship freight, and that these manu-

facturing plants and the public will freely use this branch in the conduct of their business. To what extent it will be used, is not fully shown, nor indeed could it be. It is, however, sufficient for the purpose of satisfying the requirements of the Constitution to know that it can be and will be used by other of the public than the distillery company, and by all of the public who desire to use it. This evidence we think shows a sufficient necessity for the construction of this road to justify us in saying that it is necessary for a public use. Warden v. Madisonville H. & E. R. Co., 128 Ky., 563.

But it is said that the admitted fact that the distillery company has agreed to furnish to the railway company the money necessary to construct this branch is persuasive if not controlling evidence that it is for a private enterprise and not a public use. Although this circumstance is competent as evidence tending to show, if it did so show, that the building of this branch would be a private enterprise, it is not entitled to weighty consideration in determining the nature of the improvement. The railway company was as desirous to have this branch built as the distillery company, but. it did not have the means with which to construct it, and so it was agreed between the two companies that the distillery company should advance to the railway company the money necessary to build this road—the money so advanced to be repaid by the railway company according to the terms of the agreement between them. But, in this agreement it was distinctly stipulated that the railway company should have the exclusive operation and control of the road. The distillery company having no more to do with this than any other shipper. In short, the distillery company merely agreed to advance the money to build the road under a contract by which it is to be re-embursed. There is nothing against public policy in a contract like this. Nor does it carry with it the inference that the road is for the private use of the party furnishing the money. It is a matter of no consequence so far as the legal aspects of the case are concerned who furnishes the money to build railroads. Zircle v. Southern Ry. Co., 102 Va., 17, 102 Am. St. Rep., 805, and note; Chicago & N. W. R. Co. v. Morehouse, 112 Wis., 1; 56 L. R. A., 240; St. Louis, Iron M. & S. R. Co. v. Petty, 57 Ark., 359; 20 L. R. A., 434; Kansas City, S. & G. R. Co. v. La. & W. R. Co., 116 La., 178, 7 Am. & Eng. Annot. Cases, 831, and note.

Tested by all the rules that are to govern in the settlement of cases like this, we are satisfied that the taking of appellant's property is for a public use, and that it will be necessary for such use when appropriated to it. Wherefore the judgment is affirmed.