## Fitzpatrick v. Warden.

(Decided January 23, 1914.)

### Appeal from Warren Circuit Court.

1. Property—Taking Private Property of Another.—An individual cannot take the private property of another for his own use and benefit, however needful or convenient to him the use may be, unless it be necessary to enable him to perform some public service.

2. Property—Taking Private Property—When May Be Taken.—Although the Court of Appeals has sustained the right to take private property when necessary to enable the citizen to perform a public duty or service, and to permit the establishment of mills, it has never sanctioned the taking for any other purpose, unless the public had a right to use the property taken.

3. Property—What Does Not Constitute Public Use of Private Property.—The fact that the public would be benefited in the sense that the enterprise or improvement for the use of which property is taken might contribute to the comfort and convenience of the

public, or a portion thereof, or be esteemed necessary for their enjoyment, does not constitute a public use of such property.

4. Property—Private Property May Not Be Taken for Private Purposes—Passway.—Under section 4348 of the Kentucky Statutes, a land owner cannot condemn a private passway so as to allow him to pass from one tract of land to another tract of land owned by him, since such a proceeding would amount to the taking of private property for a private purpose.

SIMS & RODES and BYRON RENFROW for appellant.

BRADSHAW & BASHAM for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

This is a proceeding by Fitzpatrick to condemn a private passway over the land of Warden. It was brought under section 4348 of the Kentucky Statutes, the first and sixth sections thereof reading as follows:

"(1)    Whenever it shall appear to a county court, that it is necessary for a person to have a private passway over the land of one or more persons to enable him to attend courts, elections, a meeting house, a mill, warehouse, ferry, a railroad depot, most convenient to his residence or whenever it shall appear to a county court, that it is necessary for a person to have a private tramroad or haul-road over the land of one or more persons to enable him to reach a warehouse, steam-boat landing, ferry, railroad switch or navigable stream, for the purpose of operating and marketing the products from a lead mine, iron works, salt-works, coal mine, fire clay and other minerals, oil well, stone quarry, sand bank or merchantable forest timber, the court shall appoint commissioners, as in case of a road, who, being first sworn to discharge their duties faithfully and impartially, shall go upon the land of the person through which the passway, private tram-road or haul-road is proposed, whether arable or not, and shall report in writing to the court, whether or not a private passway, tram-road or haul-road is necessary for any of the purposes aforesaid ;and, if favorable to the passway, private tramroad or haul-road, they shall, in their report, designate the exact route for the same by metes and bounds, course and distances, and the width thereof, which, in no case, shall exceed twenty feet, and they shall determine and assess what will be a just compensation to each owner and tenant, if any, for the land proposed to be taken for a passway, private tram-road or haul-road,

in the same manner as upon application to open and establish a new road. * * *

"(6) *Provided,* That nothing in this act shall operate to give any person, firm or corporation exclusive use of said passage, but any other person, firm or corporation shall have the right to use the same upon paying proper compensation therefor. If no agreement can be made for such compensation, then the right to such use may be condemned as herein provided."

Fitzpatrick owns two tracts of land in Warren county, which are separated from each other by an intervening tract of the appellee Warden. The larger tract, upon which Fitzpatrick resides, has an outlet to the Green Hill Public Road. The smaller tract, containing 30 acres, lies southwest of Fitzpatrick's home tract and of the Warden tract, and is bounded upon the west and north by Drake's Creek, and on the east and south by a range of abrupt cliffs, having an elevation of from 100 to 150 feet, and rising from the earth at an angle of about 45 degrees. At the south end, however, of this smaller tract, the cliffs do not quite reach the creek, thus leaving a sufficient space for a roadway along the creek, and constituting the only practicable outlet from the 30-acre tract. But in order to use this outlet it is necessary to pass over the intervening land of Warden, the home place of Fitzpatrick, and thence over Fitzpatrick's home tract to the public road.

There is no residence or building of any kind upon the 30-acre tract; and on account of its being subject to overflow from Drake's Creek, at most any time, it is unfit for residence purposes.

Under these facts Fitzpatrick instituted this proceeding in the Warren County Court to condemn a private passway over the land of Warden, alleging that his 30-acre tract bordered on no public road; that it was necessary for him to have a private passway over the land of Warden to enable plaintiff and those upon his said tract of land to attend courts and elections, a meeting house, a mill a warehouse, a ferry, and railroad depot more convenient to same; and to operate and cultivate his said tract of land, and to market the products of same at mill, warehouse and railroad depot.

The county court granted the application, and designated a passway from Fitzpatrick's 30-acre tract across the land of Warden to and across the Fitzpatrick home

tract, by metes and bounds, as required by the statute; and from that judgment Warden appealed to the circuit court.

Upon a trial there the circuit court found, as a fact, that Fitzpatrick had no other practicable outlet from his 30-acre tract except by a passway across the land of Warden as laid out by the county court; but being of the opinion that the use for which Fitzpatrick was seeking the passway was a private use to enable him to pass to and from the 30-acre tract to haul its products to his home place or to the market, and that to grant the passway would be the taking of Warden's property for a private use and not a public use, it dismissed the petition, and Fitzpatrick appeals.

The organic law of the State forbids the taking of private property for the use and benefit of private persons under any state of case; it can only be taken for a public use, and then only upon just compensation being previously made to the owner. Const., section 13.

The legislation upon the subject of the condemnation of passways in this State is collected in Chesapeake Stone Co. v. Moreland, 126 Ky., 661, where the court, in pointing out the limitations upon the taking of the property of one person for the benefit of another, said:

"An individual, for his own use and benefit, unless it be necessary to enable him to perform some public service, cannot take the private property of another, however needful or convenient to him the use may be. It seems entirely probable that only a few persons aside from the individual at whose instance it was established, will have occasion to use this tramway; but this fact does not destroy its public use in the meaning of the Constitution. It is not the number of people who use the property taken under the law of eminent domain that constitutes the use of it a public one; nor does the fact that the benefits will be in a large measure local enter into the question. In short, according to the generally recognized rule, the length of the public way, the places between which it runs, or the number of people who use it, is not the essential inquiry. The controlling and decisive question is: Have the public the right to its use upon the same terms as the person at whose instance the way was established If they have, it is a public use; if they have not, it is a private one."

And, in pointing out the application of the rule, the court in that opinion further said:

"Although our court has sustained the right to take private property when necessary to enable the citizen to perform a public duty or service, and to permit the establishment of mills, it has never sanctioned the taking for any other purpose, unless the public had a right to use the property taken. In fact, with the single exception of mills, the right of the individual to take property for an enterprise or improvement, in which the public had no rights other than those that flowed from the advantage they might enjoy from the conduct or operation of the property, has never been approved; and mills so erected have always been subject to legislative control and supervision (Ky. Stats. 1903, section 2721), the same as railroads and turnpikes, and upon this theory the taking of property for their establishment may be justified."

In Robinson v. Swope, 12 Bush, 21, and in Shake v. Frazier, 94 Ky., 143, the statute then in force allowed a passway to be condemned so as to allow a person "to pass from one tract of land to another owned by him," thereby accomplishing the same result as is contemplated in the case at bar. In those cases, however, the court held that portion of the statute to be invalid, upon the ground that it authorized a taking of property for a purely private purpose. The court, however, upheld the validity of the statute in so far as it allowed the establishment of a passway to a steam-boat landing, warehouse, ferry, or railroad depot; and the validity of the statute authorizing the condemnation of a passway for those purposes has never since been called in question in this State.

Furthermore, the determination of the question whether a particular use is public or not, within the meaning of the Constitution, is a question for the judiciary and not for the Legislature. That the courts have the undisputed right to determine when legislation has passed the limits provided by the Constitution, without reference to the character of the legislation enacted, is well settled. Tracey v. E., L. & B. S. R. Co., 80 Ky., 259; Chesapeake Stone Co. v. Moreland, 126 Ky., 667; Henderson v. City of Lexington, 132 Ky., 390, 22 L. R. A. (N. S.), 20; Riley v. L., H. & St. L. R. R. Co., 142 Ky., 67.

The proof shows that this 30-acre tract is used by Fitzpatrick in connection with his home place, and that the only purpose of the passway is to haul his farm

products from the 30-acre tract to his home place, or to market, in either case necessarily going across the intervening land of Warden. Clearly, however, this is not a public use. In speaking upon this subject in Chesapeake Stone Co. v. Moreland, *supra,* we said:

"If public use was construed to mean that the public would be benefited in the sense that the enterprise or improvement for the use of which the property was taken might contribute to the comfort or convenience of the public, or a portion thereof, or be esteemed necessary for their enjoyment, there would be absolutely no limit on the right to take private property. It would not be difficult for any person to show that a factory or hotel or other like improvement he .contemplated erecting or establishing would result in benefit to the public, and under this rule the property of the citizen would never be safe from invasion."

The facts of this case bring it squarely within the obnoxious statute that was relied upon in Robinson v. Swope and in Shake v. Frazier, *supra,* and where the court expressly held it was incompetent for the Legislature to allow a passway to be condemned so as to permit a person to pass over the land of another merely for the purpose of passing from one tract of land to another tract owned by him, since such a use would permit the taking of private property for a private purpose.

It will be noticed the statute provides for the condemnation of a private passway over the land of another person to enable one to attend court, elections, a meeting house, go to a mill, a warehouse, a ferry, or a railroad depot, most convenient to his residence; or for the construction of a tram-road or haul-road to enable one to reach a warehouse, steam-boat landing, ferry, railroad switch or navagable stream for the purpose of operating and marketing the products of a lead mine, iron works, salt works, coal mine, fire clay and other minerals, oil well, stone quarry, sand bank or merchantable forest timber.

The constitutionality of this Act in so far as it applies to the getting out of timber was sustained in Kirk-Christy Co. v. The American Association, 128 Ky., 666, and in so far as it applied to oil products, in Calor Oil & Gas Co. v. Franzell, 128 Ky., 730.

See, also Paine's Gdn. v. Calor Oil & Gas Co., 31 Ky. L. R., 754, 103 S. W., 309, 11 L. R. A. (N. S.), 727.

Appellant rests his case upon the first section of the statute, by expressly alleging that it is necessary for him to have a private passway over the land of Warden for the purpose of attending court, elections, a meeting house, and reaching a mill, warehouse, ferry or railroad depot, most convenient to his residence.

The proof shows, however, beyond controversy, that appellant has no residence upon his 30-acre tract, but that he actually resides upon the home tract, which has an outlet to the public road, and that the only purpose of the contemplated passway is to enable appellant to market his farm products raised on the 30-acre tract. The statute does not cover a case of that character; the marketing of one's farm products is not such a public purpose as is contemplated by the statute.

Judgment affirmed.