Lois W. PROFFITT, Appellant,

v.

LOUISVILLE AND JEFFERSON COUNTY METROPOLITAN SEWER DISTRICT, Appellee.

Nos. 93–SC–16–I, 93–SC–24–I and 93–SC–29–TG.

Supreme Court of Kentucky.

April 22, 1993.

Arthur L. Williams, Gregory L. Smith, Susan R.H. Gernert, Woodward, Hobson & Fulton, Louisville, for appellant.

Frank G. Simpson, III, Pedley, Ross, Zielke & Gordinier, Louisville, for appellee.

STEPHENS, Chief Justice.

The issue we decide today is whether, under Kentucky law, a condemnor, who has met the two prong test of necessity and public purpose, must give consideration to the environmental impact of a proposed project in order to avoid acting in an arbitrary and capricious manner.

This opinion is rendered subsequent to an Order entered February 12, 1993, affirming the judgment of the Jefferson Circuit Court.

From the 1970's, failing septic tanks and small area wastewater treatment plants created public health and water quality concerns in northern Jefferson County. In the early 1980's the United States Environmental Protection Agency (hereinafter EPA) issued an environmental impact statement (hereinafter EIS) which laid out the framework for extending the sewers for northern Jefferson County. By the mid–1980's changes occurred in northern

Jefferson County, which required the Louisville and Jefferson County Metropolitan Sewer District (hereinafter MSD) to re-examine the sewage problem.

MSD commissioned a study in 1985 which culminated in the North County Action Plan (NCAP). Because the NCAP differed from the original EPA recommendation, MSD requested the EPA to re-examine the situation. After studying the issue, the EPA issued an EIS supplement agreeing with MSD's recommendation of the NCAP.

To implement construction of the NCAP, MSD began acquiring easements from property owners in the northern part of Jefferson County. Being unable to acquire an easement on appellant's property, MSD initiated condemnation proceedings in January, 1992.

A chronology of the legal procedures in this case is as follows. On November 6, 1992, appellant filed a complaint for declaratory judgment and injunctive relief in the United States District Court for the Western District of Kentucky. Appellant's motion for injunctive relief was denied on November 13, 1992.

In March, 1992, appellant filed an answer to MSD's Condemnation Petition. The answer alleged that MSD did not have the right to take the easement upon appellant's property due to violations of the Endangered Species Act and the National Environmental Policy Act. On December 2, 1992, following a hearing, a judgment was entered granting MSD the right to condemn the subject property.

Appellant's next step was to acquire an ex parte restraining order from a Jefferson Circuit Judge. This December 2, 1992 Order prohibited MSD from proceeding with the NCAP.

On December 11, 1992, a hearing was held in Jefferson Circuit Court on appellant's Motion to Vacate the December 2, 1992 Judgment. An Amended Interlocutory Judgment was entered upholding MSD's right to take the property. The Jefferson Circuit Court also entered a stay pending appeal prohibiting enforcement of the Interlocutory Judgment until the Court of Appeals ruled otherwise.

The Court of Appeals, on January 6, 1993, entered an Order denying appellant's motion for stay pending appeal and granting appellee's motion to lift the Jefferson Circuit Court's stay.

On the afternoon of January 6, 1993, appellant filed what she described as a "supersedeas bond" for ten thousand dollars ($10,000) in the Jefferson Circuit Court. The Jefferson Circuit Court again ordered MSD to halt operations on appellant's property pending a hearing on the adequacy of the supersedeas bond. The next day the Jefferson Circuit Court ruled that supersedeas bonds were not available in condemnation cases to stay public projects. The bond was ordered discharged.

The Jefferson Circuit Court denied granting appellant another temporary injunction to stay the case pending appeal. The Court of Appeals also refused to stay the judgment.

On January 12, 1993, this Court entered an Order granting appellant's motion for emergency and intermediate relief. The Order also granted transfer of the underlying appeal to this Court.

Section 242 of the Kentucky Constitution states, in pertinent part, that:

Municipal and other corporations, and individuals invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed by them;

The power of eminent domain is specifically granted to MSD by KRS 76.080(6) and KRS 76.110. KRS 76.080(6) states that MSD is empowered:

[t]o acquire by purchase, gift, lease, or by condemnation, real property or any interest, right, easement, or privilege therein, as the board determines necessary, proper and convenient for the corporate purposes of the district, ...

KRS 76.110(1) provides that:

[t]he district [MSD] shall have the power to acquire by purchase, gift or eminent domain proceedings, the fee or such right, title, interest or easement, in such

lands as may be deemed by the district necessary for any of the purposes mentioned in KRS 76.010 to 76.295, ...

MSD attempted to exercise this power pursuant to KRS 416.550. KRS 416.550 of the Eminent Domain Act provides in relevant part:

Whenever any condemnor cannot, by agreement with the owner thereof, acquire the property right, privileges or easements needed for any of the uses or purposes for which the condemnor is authorized by law, to exercise its right of eminent domain, the condemnor may condemn such property, property rights, privileges or easements pursuant to the provisions of KRS 416.550 to 416.670 [the Eminent Domain Act].

It has long been held that " [i]n every case in which the power of eminent domain is invoked, it must appear that the property is desired for a public use and will be reasonably necessary for that use." *Riley v. Louisville, H. & St. L. Ry. Co.*, 142 Ky. 67, 133 S.W. 971, 973 (1911). Nor can the taking be done arbitrarily. See Ky. Const. § 2.

In the case before us, appellant concedes that the requirements of necessity and public purpose are met in the condemnation of appellant's land. Appellant argues that MSD acted arbitrarily and capriciously by failing to give proper weight and consideration to the environmental impact of MSD's proposed project on appellant's property.[1]

■ Courts cannot review the exercise of discretion of a condemning body, unless such body has acted arbitrarily or in excess of its authority. *Commonwealth v. Vandertoll*, Ky., 388 S.W.2d 358 (1964); *Commonwealth v. Burchett*, Ky., 367 S.W.2d 262 (1963). We do not look at whether the condemnation was necessary or for a public purpose, as such was conceded. The only issue before us is whether MSD acted arbitrarily and capriciously by failing to give

proper consideration to the environmental impact of the NCAP.

In support of her position, appellant proposes that we adopt the rationale of *Florida Power and Light Co. v. Berman*, 429 So.2d 79 (Fla.Dist.Ct.App.1983). In *Berman* the landowner/condemnor alleged that a proposed condemnation by the Florida Power and Light Company was an abuse of discretion. Quoting *Florida Power Corp. v. Gulf Ridge Council*, 385 So.2d 1155, 1156 (Fla.Dist.Ct.App.1980), *Berman* stated that there are

five criteria that a condemnor must weigh in order to properly exercise its discretion; (1) Availability of an alternate route; (2) costs; (3) environmental factors; (4) long-range area planning; and (5) safety considerations.

*Berman* at 82. Due to a failure to consider environmental factors, the *Berman* court found that the condemnor abused its discretion.

As evidenced above, Florida courts have held that environmental factors are appropriate matters for consideration by the condemning authority. This declaration is based in part on Article 2, Section 7, of the Florida Constitution which provides in pertinent part: "It shall be the policy of the state to conserve and protect its natural resources and scenic beauty."

■ Kentucky has no case law, regulation, statute or constitutional requirement which creates a duty upon a condemning authority to give consideration to the environmental impact of a proposed project beyond those requirements which are already in place pursuant to the numerous federal laws on the subject of the environment. Thus, there was no state requirement that MSD perform any environmental assessment of appellant's property.

---

1. Appellant sought to have MSD examine and evaluate a wide range of potential environmental impacts that could occur to appellant's land if MSD went forward with the NCAP. Appellant asserts that MSD refused to evaluate such concerns. MSD states that, in addition to meeting the requirements of the EPA, it voluntarily performed a survey on the impact of the NCAP on the Indiana Bat and the Gray Bat. MSD also conducted a survey to determine the impact on Running Buffalo Clover. These surveys found that there would be no significant impact on the bats or the clover.

It is not the role of the Court to establish the criteria a condemning authority must follow in the condemnation of property. This is a function of the legislature. The legislature does not require an environmental assessment to be conducted. This is not to say that this Court believes such an assessment is unnecessary; however, the legislature is the proper entity to make such a determination.

Appellant argues that the failure to consider the environmental impact of a project is an arbitrary act prohibited by Section 2 of the Kentucky Constitution. Section 2 states that:

Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority.

We refuse to hold that MSD's failure to perform environmental assessments prior to condemnation is violative of Section 2 of the Kentucky Constitution. States which require environmental assessments do so pursuant to an express constitutional provision or statute requiring such action. *See* Mich. Const. Art. 4, § 52; Pa. Const. Art. I, § 27; Fla. Const. Art. 2, § 7.

If we were to follow appellant's request and rely on *Berman,* this would require a condemnor to investigate unspecified environmental concerns of the condemnee prior to condemnation even where the condemnee cannot provide any evidence of a site specific adverse environmental impact by reason of the proposed project. Any landowner within a project area could impede the public project from going forward by requesting that the condemning authority investigate the property for the environmental impact upon any number of federally endangered species.

Following *Berman* would judicially create an exception to the Eminent Domain Act. Not only would this violate Section 28 of the Kentucky Constitution, it would effectively emasculate the Eminent Domain Act.

Appellant argues that the trial court erred in determining the appropriate burden of evidence with regard to whether MSD acted arbitrarily and capriciously.

This Court has determined that MSD did not act in an arbitrary or capricious manner because there was no state requirement that MSD perform environmental assessments of the NCAP. We need not address the issue of the burden of evidence.

Appellant also argues that, based on *Ratliff v. Fiscal Court of Caldwell County, Kentucky,* Ky., 617 S.W.2d 36 (1981), a property owner in a condemnation action can stay possession of the property by taking an immediate appeal. Appellant conceded that, in the instant case, the condemnation of her land was necessary and for a public use. The issue in *Ratliff* concerned the public use of condemned property. Since that issue is not before this Court, we need not address appellant's argument, or *Ratliff.*

The only issue addressed in this appeal is whether MSD acted arbitrarily and capriciously in failing to give consideration to the environmental impact of the NCAP. Because we believe that no such duty is imposed upon condemnors, we affirm the judgment of the Jefferson Circuit Court which granted MSD the right to condemn the easement upon the property of appellant.

All concur.