## HANBURY *et al. v.* WOODWARD LUMBER CO.

1. Where the owner of a tract of land causes the same to be laid off into lots, with intervening streets, which latter are, in the act of appropriation by 'the owner to that use, expressly "dedicated and set apart for all time to come, primarily for the special use, benefit and convenience of the persons who might thereafter purchase, own or occupy any of said lots, and incidentally for the general use of the public," the public, under such a grant, acquires in the premises so appropriated for streets no greater interest than is necessary to a reasonable and proper exercise of the incidental right of way conferred upon the public by the act of dedication.

2. In such a case, the purchasers of the lots abutting on such streets become the owners of the fee in such streets, and, notwithstanding the easement in the public, are authorized to exercise over the property so covered by the streets such use as may not be inconsistent with the exercise upon the part of the public of its right of way.   It is otherwise, where the fee to the premises covered by a public street is in the municipal corporation, and not in the abutting lot owners.

3. Where the fee to such premises is vested in the abutting lot owners, and a municipal corporation holds only an easement as for a right of way, the municipal corporation may, with or without express statutory authority, in the exercise of its general discretion touching the control of the public ways, permit the owner of the fee to appropriate to his own private personal use that portion of the land covered by such street which is

opposite to his abutting lots; provided such use be not inconsistent with the reasonable exercise upon the part of the public of its concurrent right of way.

4. Whether or not the use so authorized could be enjoyed by the owner of the fee without impairing the right of the public in the exercise of its right of way, is primarily a matter for the municipal authorities; and this court, at the suit of a private citizen not the owner of property abutting upon such portion of the street so appropriated, will not, by injunction, control them in the exercise of such a discretion in favor of the owner of the fee, unless it has manifestly been abused.

5. Where a railroad company and another are the owners of property lying upon the opposite sides of, and abutting upon, a street the fee to which is in them, it is primarily no abuse of discretion for the municipal authorities, holding the mere easement as for a right of way, to authorize such lot owners to so construct across such street a railroad track as to connect the premises of the two respective lot owners; provided the proposed plan of construction be not inconsistent with the reasonable exercise upon the part of the public of its right of way.

6. Whether or not such track may thereafter, because of the manner of its construction or the manner of its use, become a nuisance and liable to abatement as such, is a question which is not involved in the present controversy.

December 13, 1895.

Petition for injunction.    Before Judge Clark.    Fulton county.    July 19, 1895.

Hanbury, Adair and others brought their petition to enjoin the Woodward Lumber Company from erecting a planing-mill plant on six acres of land in the city of Atlanta, fronting 636 feet on Murphy avenue, a public street in that city; and to enjoin that company, and the Central Railroad Company and the receivers thereof, from constructing by permission of the city authorities, and using a spur-track from the main line of the railroad across Murphy avenue to the land of the lumber company.    The Atlanta Ice Co., a corporation owning and operating an ice factory with land on which it is situated, adjoining that of the lumber company, was made a party plaintiff by amendment.    On the hearing the injunction prayed for was denied.    The plaintiffs except to so much of the judgment as does not restrain

the laying of the spur-track across the avenue, claiming that the same would be a public nuisance and without authority of law; that the city could not grant such authority; and that the proposed use of the street by crossing it with a railroad track will be exclusively for the private benefit of the lumber company.    It appears that the fee in the avenue is in the abutting owners, the only one of whom (other than the lumber company) appearing in this case is the ice company.    Plaintiffs own other property in the vicinity. The avenue runs southwesterly from the west end of Whitehall street, parallel to and adjoining the right of way and tracks of the railroad company.    For the plaintiffs it appeared, that the avenue is a public thoroughfare and one of the most prominent feeders of Whitehall street, is a hard dirt road not macadamized, and consequently is preferred by persons using it, except when muddy in midwinter. From West End to East Point along both sides of the railroad is a large population, and these people and those who live along Gordon street and to the west and southwest of West End habitually use Murphy avenue in preference to Peters street just across the railroad from the avenue, or Lee or Park streets, as being more direct and more easily traveled.    The avenue is used to a considerable extent by the Atlanta Ice Company in delivering ice, and in the spring, summer and fall it is used more extensively and constantly than Railroad avenue which is just across the tracks of the railroad from Murphy avenue.    Any obstruction or encroachment would seriously interfere with the traveling public; and the proposed spur-track would be a serious obstruction, and would be a source of annoyance, inconvenience and danger to those so traveling.

For defendants the following appears, among other things: But one track will be laid across the avenue, and that upon the grade of the street.    Such track will be little or no obstruction to travel, as it will be used only for rolling freight-cars across to and from the grounds of the lumber

company on an average of once a day. Woodward, the president of the company, on arranging to purchase the six acres of land, asked permission of the city council to cross the avenue with a railroad track, which permission was granted on condition that he give satisfactory bond to the mayor, relieving the city from any accident or damage that might occur on this track and for keeping the crossing in repair. Afterwards, on application of a few residents of West End, the matter was referred to a committee, some of whom visited the locality, and after full hearing, unanimously reported that the previous action of the council be sustained. There are two main lines of railroad track on the right of way; and an average of 41 trains run over them daily, exclusive of extras and specials. Murphy avenue is not the main street leading to and from the city on that side of town and in this vicinity, but is a dirt road without paving of any kind, and without sidewalks. Railroad avenue, just across the railroad tracks, and parallel thereto, is macadamized, has sidewalks, is a public thoroughfare to and from the city, and the travel on it is much greater than on Murphy avenue. The site for the lumber company is cut off from the residence portion of West End by two railroad tracks and a high railroad embankment. Railroad avenue is fifty or sixty feet wide, and Murphy avenue is forty or fifty feet wide.

*G. A. Howell, Hillyer, Alexander & Lambdin* and *C. D. Hill,* for plaintiffs. *Rosser & Carter, J. B. Goodwin* and *Dorsey, Brewster & Howell,* for defendants.

ATKINSON, Justice.

We are not now to consider whether in a proceeding to condemn as for a public way the property of the citizen the public acquires a greater interest in the property condemned than is necessary to the enjoyment of the right of way; nor are we to inquire whether in such a case the public would be authorized to impose upon the land seized to public use

a servitude other than that for which it was condemned. Condemnation proceedings operate upon the unwilling, and of necessity are construed most strongly in favor of the person whose property is being seized. But in the present case we are to deal with the rights of the parties claiming the right to use the tract occupied as a street as parties willing to contract, and who by contract have actually settled for themselves the details of the agreement upon which their rights rest.

The original owner of the property caused the same to be platted and laid off into lots, with intervening streets. He did not leave to the determination of the law whether in this act he intended to devote the latter to a public use, but on the contrary, by solemn covenant expressed in writing, he declared that he dedicated and set apart for all time to come the streets included in such plat, primarily for the special use, benefit and convenience of the persons who might thereafter purchase, own or occupy any of said lots, and incidentally for the general use of the public. Under this act of dedication the municipal authorities entered, took possession of and improved the particular street in question. The owners of abutting lots desire to lay a railroad track across this street, connecting their premises, and the municipal authorities, conceiving that such structure will in no manner interfere with the reasonable enjoyment by the public of its right of way, have consented. Private individuals owning other lots abutting at another point on the same street and upon other streets embraced in and covered by the same act of dedication, prayed injunction, and insist that under the provision of our code, section 719, the municipal authorities cannot authorize the construction of the proposed railroad track across the street in question. It will be seen that the code provision in question relates to the *appropriation* of a public highway by a railroad company; and it must be conceded that if this was an ordinary highway and it was the purpose of the railroad company to ap-

propriate it or any part of or interest in it to its own corporate use against the will or without the consent of the governing body of the city, it could not be done, neither could it lawfuly appropriate the property of a private citizen without express charter authority; but in either case, we know of no reason why, if the person whose property is desired for that purpose could lawfully and should consent to its appropriation, any legal obstacle would arise which would prevent it.

In order to determine the rights of the parties, it is necessary to inquire as to the extent of the interest acquired by the city under the act of dedication in the present case, and, determining that question, we will further inquire as to the relative interests of the abutting lot owners. It would have been possible for the owner in the act of dedication to have conferred upon the city authorities the fee to the streets, in which event the right of the abutting lot owner would have been limited to its uses as a mere way; he would have had no right or interest beyond that which the general public was entitled to enjoy. But the city authorities contented themselves with an acceptance of the mere incidental general public use, in subordination to any other consistent right of the abutting lot owner, to whose special use in the same public act of appropriation the streets had been devoted for all time to come; and for this reason the city acquired no greater interest in the premises so set apart as streets than was necessary to the reasonable and proper exercise of the incidental right of way conferred upon the public in the act of dedication. The effect of the creation of the easement in the city and the dedication of the land in question to the special use declared for an indeterminable period of time, was to pass the fee to the abutting lot owner and give to him the right of any free and uninterrupted use which would be consistent with the exercise by the public of its general right of way.

We thus conclude that, under the act of dedication in the

present case, the abutting lot owner and the city author-
ities each represented separate interests.   The primary use
declared in favor of the abutting lot owner is necessarily
secondary to the incidental use of the general public, of
whom abutting lot owners upon the same and other streets
covered by the act of dedication constitute a part.   For the
general use being declared, it can only be carried into execu-
tion by making the special use in favor of the lot owner sub-
ordinate to what in the very nature of things must be the
dominant servitude in favor of the public.   And it is a rule
of construction of universal acceptance, that where separate
uses are declared in the same instrument, it must be so con-
strued, if possible, as that both may stand, and thus give full
expression to the intention of the grantor.   So con-
strued, this writing declaratory of the purposes and
scheme of the dedication gives to the public what the donor
intended—the right of way for its use, and to the lot owner
the privilege of exercising any right not inconsistent with
the right bestowed upon the public.  Thus construed the uses
declared are consistent and may legally coexist.   The pub-
lic accepts a qualified interest.   To what extent the owner
of the fee may appropriate to his own use those other inci-
dental rights not conflicting with the public use, is necessa-
rily a matter resting primarily with the city authorities, and
is referable to the broad discretionary powers   conferred
upon them in the conduct and management of the public
ways.   He may be permitted to lay gas and water pipes or
drains under the roadway, and do many other acts for his
own advantage, provided the use of the public is not im-
paired.   Whether or not such uses could be enjoyed with-
out prejudice to the public right is, as we have said, pri-
marily a matter for the consideration of the city authorities,
and if they conceive that the proposed right of the abutting
lot owner may be safely exercised without exposing to in-
convenience or jeopardy the easement of the public, an in-
junction against the exercise of such right, at the suit of

private citizens not the owners of property abutting upon that portion of the street sought to be devoted to the particular private use, will not be granted.    In respect to this matter the authorities represent the public, and their consent is a sufficient warrant for upholding the judgment, that the entry of the owner of the fee was not *per se* wrongful.

In the present case the parties sought to be enjoined were, the one a railroad company, the other a manufacturing company.    They owned lots opposite each other and abutting upon the street in question.    The latter desired the construction of a spur-track so as to connect the two lots, and thus give it connection with the other company's railroad.    They each agreed to this, and the municipal authorities consented, by resolution declaring that the public would suffer no inconvenience from the construction of the proposed track.    We think, inasmuch as the city authorities held only an easement to the extent of a right of way, that there was no abuse by them of their discretion in allowing the owners of the fee the uses of the street for the purposes above mentioned.    It was a valuable right to the owner of the lot.    Proper precautions were taken to protect the interests of the public, and there is no reason why he should have been deprived of that right.

Of course we cannot undertake to say that the proposed track may not hereafter, either because of the manner of its construction or the manner of its use, become a nuisance and subject to abatement as such.    An increase in population or travel may bring about such a result.    But under the present record, we hold that in favor of the owner of the fee in the street the city authorities had the power to authorize a joint enjoyment of the property, and that their discretion was not abused when it was determined that the proposed use by the owner of the fee was not inconsistent with the exercise by the public of its dominant right of way.

*Judgment affirmed.*