### HARROLD BROTHERS *et al. v.* MAYOR AND CITY COUNCIL OF AMERICUS *et al.; et vice versa.*

1. The construction, with legislative and municipal sanction, of a spur-track which extends from a service track near the freight terminal of a commercial steam railroad company, longitudinally upon a street in a city, intended for the use of the public so that they may be served without discrimination, not merely by permission, but as of right, is for a public use.

2. The assaults upon the constitutionality of the amendment to the charter of Americus, authorizing municipal assent to the construction of a railroad track longitudinally in its streets, become immaterial, because such power inheres in that municipality by force of a public law (Civil Code (1910), § 2585, par. 5). The ordinance giving municipal assent in the present instance was properly passed.

3. The evidence examined; and held, that the proposed spur-track, constructed as contemplated, will not unreasonably interfere with travel or obstruct the street.

4. Where the owner of a tract of land causes same to be laid off into lots with an intervening street dedicated to the public use, the public under such grant only has an easement in the street, and the title of an abutter extends to the middle of the street, burdened with the easement of the street. The laying of railroad tracks on such a street, and the operation of a commercial railroad thereon, impose an additional servitude, for which the abutter is entitled to compensation; and before the railroad company may lawfully lay its track upon such street, it must first pay or tender to an abutter just and adequate compensation for the damages consequential upon the construction of the track and the uses to which it will be put. Upon failure to pay or tender the amount of such damages, equity will enjoin the construction of the track.

NOVEMBER 13, 1914.

Injunction. Before Judge Littlejohn. Sumter superior court. January 10, 1914.

About the year 1855 George M. Dudley owned a tract of land in the City of Americus, and in that year he laid out a street through it, known as Hampton street, which he dedicated to the use of the

public, and sold off various lots abutting both sides of it, giving the street as a boundary. The plaintiffs are successors in title of Dudley to certain lots on Hampton street, owning property on both sides of it. Hampton street begins at the depot of the Central of Georgia Railway Company, crosses Lamar street, and extends to Wheeler street and beyond. Near the junction of Lamar street with Hampton the Central of Georgia Railway Company has a spur-track which crosses Wheeler street and enters into the lot belonging to the plaintiffs, near the point of intersection. An amendment to the charter of the City of Americus, granted in 1913, authorized that municipality to permit steam railway companies to run tracks from their terminal on such streets as the mayor and city council may approve, and upon such terms and conditions as they may impose. The mayor and council adopted an ordinance allowing the Central Railway Company to extend the side-tracks south along and upon Hampton street, under the supervision of the city engineer. The Central Railway Company by virtue of this authority undertook to lay a branch track from its siding at the intersection of Wheeler street along Hampton street to Lamar street. The plaintiffs sought an injunction against the extension of the spur-track along Hampton street between Wheeler and Lamar streets. At the interlocutory hearing the court rendered the following judgment: "I am of the opinion that under the Acts of 1913, page 490, and the ordinance passed in pursuance of said Act by the Mayor and City Council of Americus, the defendant Railway Company is authorized to lay its track in Hampton street as proposed, subject, however, to the constitutional restraint that 'private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid;' and if the property of the complainants in this case, who are abutting-land owners, will be damaged by laying and use of a track in said street, the defendant Railway Company must first pay or tender to such property owner just and adequate compensation for the damages consequential upon the construction of such track; and as it does not appear from the pleadings or the testimony that such payment or tender has been made in this instance, the injunction is continued and the laying of the track in said street is hereby enjoined pending the compliance with the constitutional provision heretofore referred to in this order." The complaining lot-owners except to the refusal of the court to grant an

absolute injunction, and the city and the railroad company by cross-bill excepts to the grant of the injunction until there is compliance with the constitution and laws respecting the taking of private property for public use.

*W. P. Wallis,* for plaintiffs.   *Hollis Fort, E. A. Hawkins, J. B. Hudson,* and *W. A. Dodson,* for defendants.

EVANS, P. J.   (After stating the foregoing facts.)

1.   The fundamental proposition presented by this writ of error is, whether the spur-track proposed to be laid longitudinally in Hampton street, between Wheeler and Lamar streets, in the City of Americus, will be devoted to a public or private use.   A taking of private property for private use is opposed to the elemental conception of individual ownership, and forbidden by the organic law of the State and the United States.   A railroad company is a public institution, and to effectuate the public purpose for which it was created it is given the right of eminent domain.   Not only may it exercise this right in the building of its main line, but also in the construction of sidings, turnouts, and other tracks necessary to a proper discharge of its corporate functions.   It will hardly be denied that switch-tracks and sidings designed to facilitate the passage of trains, or to permit the receiving and delivery of freight at its station, are for public uses.   These instances are plain; but there may arise cases where the line of demarcation between public and private use calls for the exercise of nice judicial discrimination. This largely springs from the complexity of problems in railroad operation in a joint effort to enlarge the business of the railroad, and to serve the public, and particularly its patrons.   Many cases have been before the courts of last resort in recent years, and the decided weight of authority is that the public nature of a siding or spur-track does not depend upon the number of people that it accommodates, or who use it, but rests upon the fact that everybody who has occasion to use it may lawfully and of right do so.   The circumstance that a spur-track or siding is also designed to serve a private use, while important in determining the character of the use, is not conclusive against its public nature.   Where a railroad company constructs a spur-track under conditions where the public are not excluded from its use, or denied equal rights of use, the mere fact that it is actually used by one or two individuals does not negative the public character of the use.   Butte &c. Ry. Co. *v.* Mon-

tana Union Ry. Co., 16 Mont. 504 (41 Pac. 232, 31 L. R. A. 298, 50 Am. St. R. 508) ; M. Ry. Co. v. Raymond Granite Co., 3 Cal. App. 668 (87 Pac. 27) ; South Chicago R. Co. v. Dix, 109 Ill. 237; Chicago, B. & N. R. Co. v. Porter, 43 Minn. 527 (46 N. W. 75) ; Zircle v. Southern Ry. Co., 102 Va. 17 (45 S. E. 802, 102 Am. St. R. 805) ; Chicago &c. R. Co. v. Morehouse, 112 Wis. 1 (87 N. W. 849, 56 L. R. A. 240, 88 Am. St. R. 918) ; Railroad Com. v. Kansas City R. Co., 111 La. 133 (35 So. 487) ; Kansas City &c. Ry. Co. v. La. &c. R. Co., 116 La. 178 (40 So. 627, 5 L. R. A. (N. S.) 512, 7 Ann. Cas. 831) ; Riley v. Louisville &c. Ry. Co., 142 Ky. 67 (133 S. W. 971, 35 L. R. A. (N. S.) 636, 25 Ann. Cas. (1912D) 230) ; Toledo R. Co. v. East Saginaw etc. R. Co., 72 Mich. 206 (40 N. W. 436).

The whole question was very elaborately considered by Wiswell, C. J., in Ulmer v. Lime Rock R. Co., 98 Me. 579 (57 Atl. 1001, 66 L. R. A. 387). In that case a railroad company commenced proceedings to condemn, under its power of eminent domain, a right of way over the land of the complainant, for the purpose of building thereon a branch track from one of its main lines to a lime quarry owned by a private corporation. He said: "The tests decisive of this question as to whether a branch track of this character is to be constructed and operated for public or private purposes, deducible from the great weight of authority upon the question in this country, are these: if the track is to be open to the public, to be used upon equal terms by all who may at any time have occasion to use it, so that all persons who have occasion to do so can demand that they be served without discrimination, not merely by permission but as of right, and if the track is subject to governmental control, under general laws, as are the main lines of a railroad, then the use is a public one."

Of course the construction of a spur-track from the main line of a railroad company for the purpose of serving an individual enterprise only is not a public purpose. *Bradley* v. *Lithonia &c. R. Co.,* 141 *Ga.* 741 (82 S. E. 138). In that case the court held that the evidence was contradictory upon the question of whether it was being constructed to serve the public generally or merely a private enterprise, and upheld a judgment refusing an interlocutory injunction against the railroad company's condemning land for the construction of a spur-track. In *Mayor &c. of Macon* v. *Harris,* 73

44

*Ga.* 428, the municipality contracted with an industrial company and the street-railway company that the industrial company might employ the street-railway company to haul coal and other material to its manufacturing plant over the streets of the city. The court held that such an arrangement made a case where the railroad company's franchise was perverted to a private object. It will be observed that under this contract the streets of the municipality were to be used for the exclusive benefit of a private corporation, and this was in no sense a public use.

The court was authorized to find from the evidence that the construction of the service track on Hampton street was not for the exclusive benefit of any private individual, but for the purpose of serving any person along the street, or adjacent to it, that could use the same.

2. Various assaults are made upon the act approved August 5, 1913, so amending the charter of the City of Americus as to allow the mayor and city council to grant permission to steam-railway companies to run tracks from their terminals on such streets as the mayor and city council may approve, and upon such terms and conditions as they may impose. Attack is also made upon the ordinance authorizing the construction of the proposed spur-track in the present instance, as not having been passed pursuant to the charter and ordinances of the City of Americus. It is well settled that a commercial steam railroad can not lay its tracks longitudinally along the streets of the city, without the sanction of the General Assembly. *Daly* v. *Georgia Southern Railroad Co.,* 80 *Ga.* 793 (7 S. E. 146, 12 Am. St. R. 286). This sanction may be given under the general railroad law. The latter (Civil Code (1910), § 2585, par. 5) confers upon a railroad company, incorporated under the general railroad law, the power to construct its tracks longitudinally in the streets of the city, for lawful use, with the written consent of the municipal authorities. *Athens Terminal Co.* v. *Athens Foundry & Machine Works,* 129 *Ga.* 393 (58 S. E. 891). So that it would be idle to discuss the merits of the attack made upon the amendment to the city charter, as the railroad company would have authority, with the municipality's consent, to construct its track longitudinally along the streets of the city. We have carefully considered the criticisms respecting the enactment of the ordinance

authorizing the construction of the tracks along Hampton street, and do not think them meritorious.

3. While it is competent for the legislature to permit the longitudinal use of a street by a railroad company in a proper and lawful manner, a railroad company can not maintain a nuisance thereon, nor unreasonably obstruct the street, nor use the street for a yard nor for switching or drilling purposes. *Atlantic &c. Railway Co.* v. *Montezuma*, 122 *Ga.* 1 (49 S. E. 738). The evidence respecting the laying of the tracks and its effect upon the travel in that street, and the manner in which the track would be used, authorized a conclusion that the construction of the spur-track would not interfere with travel, or unreasonably obstruct the street.

4. When the plaintiffs' predecessor in title dedicated Hampton street for the use of public travel thereon, he did not part with his ownership of the soil, except to the extent of the servitude imposed and defined by the act of dedication. Where the public only has an easement in the street, the title of an abutter extends to the middle of the street, burdened with the easement of the street. *Hanbury* v. *Woodward Lumber Co.*, 98 *Ga.* 54 (26 S. E. 477). The laying of railroad tracks in a public street where the servient fee is in the abutter, and the operation of a commercial railroad thereon, impose an additional servitude, for which the abutter is entitled to compensation. As was said by Judge Cooley in Grand Rapids R. Co. *v.* Heisel, 38 Mich. 62 (31 Am. R. 306, 310): "It is not usual for such a road [a commercial steam railroad] to be laid in one of the public highways, and the cases in which it is permitted are exceptional. For that reason, therefore, if for no other, the owner whose land is taken for a highway, whether in town or country, can not be understood to have assented to its being appropriated, either wholly or in part, to railway purposes at the discretion of the public authorities, and to have been compensated for such appropriation. Neither can the use of the highway for the ordinary railway be in furtherance of the purpose for which the highway is established, and a relief to the local business and travel upon it; the two uses, on the other hand, come seriously in conflict; the railroad constitutes a perpetual embarrassment to the ordinary use, which is greater or less in proportion to the business that is done upon it and the frequency of trains. When, therefore, the country highway or the city street is taken for the purposes of a railroad company engaged

in the business of transporting persons and property between distant points, the owner of the soil in the highway is entitled to compensation, because a new burden has been imposed upon his estate, which affects him differently from the original easement, and may be specially injurious." If the property of an abutting-land owner will be damaged by the laying and use of the track in the street, the railroad company must first pay or tender to such property owner just and adequate compensation for the damages consequential upon the construction of the track and the use to which it will be put. Upon failure to pay or tender the amount of such damages, equity will enjoin the construction of the track. *Athens Terminal Co.*. v. *Athens Foundry &c.*, supra.

*Judgment affirmed on both bills of exceptions. All the Justices concur, except Fish, C. J., absent.*