47881. DEPARTMENT OF TRANSPORTATION v. LIVADITIS et al.

Argued February 5, 1973 — Decided June 15, 1973 —
Rehearing denied July 12, 1973 —

*Robert A. Flournoy, Charles A. Evans,* for appellant.

*J. M. Grubbs, Jr., Adele Platt, George W. Carreker,* for appellees.

QUILLIAN, Judge. ■ The first headnote requires no elaboration.

■ Three of the twenty-seven enumerations of error deal with the rejection of certain evidence sought to be introduced by the plaintiff. The trial judge found that the plaintiff had failed to provide the condemnee with certain plans under a notice to produce. He therefore excluded further oral testimony sought to be elicited with regard to the plans.

Section 37 of the Civil Practice Act (Code Ann. § 81A-137; Ga. L. 1966, pp. 609, 650; 1967, pp. 226, 235) provides that upon failure to produce under Section 34 of the Civil Practice Act (Code Ann. § 81A-134; Ga. L. 1966, pp. 609, 646; 1967, pp. 226, 233; 1972, pp. 510, 525), the trial judge may impose certain sanctions, among which is prohibiting the disobedient party from introducing designated documents or items of testimony. Here the trial judge quite properly applied these sanctions. Although the condemnor argues that the best evidence rule does not apply to a situation of this sort, it is clear that it was proper to prohibit oral testimony regarding the same matter as that of the excluded documents since to allow it would defeat the effectiveness of the sanction imposed under Section 37 of the Civil Practice Act.

■ The bulk of the condemnor's enumerations of error deal with the trial judge's finding of fact and conclusions of law. In considering this, special attention should be paid to the Act dealing with the power of the superior court to set aside a declaration of taking. Code Ann. § 36-1303 (6) provides that the order by the Director of the State Highway Department (now Department of Transportation) "shall be conclusive as to the use of the property condemned, as well as the authority to condemn under the provisions of this Chapter." Under the law, "the condemnee may petition the superior court to vacate, set aside and annul the declaration for: (a) fraud or bad faith, as contemplated under Code § 37-709, (b) improper use of the powers provided under the Act, (c) abuse or misuse of the powers, or such other questions as may be raised under Code § 36-1308, i. e., questions of law arising upon the pleadings after the filing of the declaration of taking." *Owens v.*

*State Hwy. Dept.,* 113 Ga. App. 608, 610 (149 SE2d 406). Nevertheless, "The power of the court in this respect shall not be construed as extending to a determination of questions of necessity, but there shall be a prima facie presumption that the property condemned is taken for and is necessary to the public use provided for in this Chapter." Code Ann. § 36-1303 (6).

A thorough discussion of the exercise of the power of eminent domain is found in *Miles v. Brown,* 223 Ga. 557, 558 (156 SE2d 898): " 'The necessity or expediency of taking property for public use is a legislative question upon which the owner is not entitled to a hearing under the due-process clause of the fourteenth amendment, and the same clause of the constitution of this state.' . . . The owner of the land sought to be condemned cannot prevent such taking because there is other property which might have been suitable for the purpose (*King v. City of McCaysville,* 198 Ga. 829 (3) (33 SE2d 99)) or that the construction of a power line is (a) not necessary or (b) another and more direct line is obtainable. *Miller v. Georgia Power Co.,* 222 Ga. 239, 242 (149 SE2d 479). 'A large discretion is vested in a party having the right to condemn, in the selection of the particular property to be condemned; and such selection should not be interfered with or controlled by the courts, unless made in bad faith, or capriciously or wantonly injurious, or in some respect beyond the privilege conferred by statute or its charter.' "

In interpreting Code Ann. § 36-1303, the Supreme Court has found that the determination of necessity by the condemning authority is final and conclusive. *Pye v. State Hwy. Dept.,* 226 Ga. 389, 406 (175 SE2d 510). This, of course, does not mean that the power of condemnation may be unfairly exercised or that a condemnee might be "singled out." However, the protection offered is against clear abuses of power under the Act and does not go to questions as to feasibility, practicality and desirability. *Miller v. Ga. Power Co.,* 222 Ga. 239, 241 (149 SE2d 479). Hence, the finding with regard to feasibility was irrelevant to the issues here involved.

The question here was solely whether the condemnor had acted outside its power as prohibited by Code Ann. § 36-1303. The condemnor is not authorized to exercise the power of eminent domain to acquire property to be used by private individuals for private use and private gain. *Housing Authority &c. v. Johnson,* 209 Ga. 560, 563 (74 SE2d 891). The trial judge's order was predicated on the basic premise that the road to be built on the property taken would be used by private individuals and that the

taking was not for a public purpose.

Section 52 of the Civil Practice Act (Code Ann. § 81A-152; Ga. L. 1969, pp. 645, 646; 1970, pp. 170, 171) requires findings of facts and conclusions of law by a trial judge sitting without a jury. The provision in question states that findings of fact shall not be set aside unless clearly erroneous. This results in a situation similar to that under the Workmen's Compensation Act. Code Ch. 114-7. See especially Code § 114-710. In passing upon findings by the Board, this Court has recognized that a finding based upon an erroneous legal theory is cause for reversal or recommittal. *Borden Co. v. Dollar,* 96 Ga. App. 489, 490 (100 SE2d 607); *Indemnity Ins. Co. of N. A. v. Loftis,* 103 Ga. App. 749, 751 (120 SE2d 655); *Barbree v. Shelby Mutual Ins. Co.,* 105 Ga. App. 186, 187 (123 SE2d 905).

In this case, the finding by the trial judge of private use was based upon an erroneous legal theory. In dealing with cases involving service or spur tracks, the Supreme Court held in *Harrold Bros. v. Mayor &c. of Americus,* 142 Ga. 686, 688 (83 SE 534): "Where a railroad company constructs a spur-track under conditions where the public are not excluded from its use, or denied equal rights of use, the mere fact that it is actually used by one or two individuals does not negative the public character of the use." See *Atlanta, Stone Mtn. &c. R. Co. v. Bradley,* 141 Ga. 740 (2) (81 SE 1104); *Bradley v. Lithonia &c. R. Co.,* 141 Ga. 741 (2) (82 SE 138). "A commercial railroad company duly chartered by the secretary of state may ordinarily condemn private property for the purpose of locating its railroad under the power of eminent domain, and may exercise such power for the purpose of constructing a spur-track from its main line where the purpose of the spur-track is for public utility. Whether it is such will depend upon the right of the public to use it, rather than the number of persons who actually use it. If the public generally have a right and but one person uses the spur-track, the purpose is deemed to be public; but if the public generally are excluded, and the use of the spur-track is limited to that of an individual enterprise, it is not public, and the power of eminent domain can not be exercised for the purpose of locating the track." *Bradley v. Lithonia &c. Co.,* 147 Ga. 22 (2) (92 SE 539).

The Supreme Court has consistently applied this rule in dealing with the public or private character of a given situation. *Rogers v. Toccoa Electric Power Co.,* 163 Ga. 919 (4b) (137 SE 272); *Hightower v. Chattahoochee &c. R.,* 218 Ga. 122, 124 (126 SE2d 664); *Johnston v. Clayton County Water Auth.,* 222 Ga. 39, 42 (148 SE2d 417);

*Austin Enterprises v. DeKalb County,* 222 Ga. 232, 233 (149 SE2d 461).

The findings with regard to any prior use of a road, either public or private, would not be decisive. The question is whether the proposed use was authorized.

There was evidence to support the trial judge in finding that the land would be used predominantly by one company. However, this was not conclusive in determining that such was a private road for there is nothing in the record to show that the road would be used exclusively by that company or that it had the power to exclude others from its use. Instead the evidence showed that any member of the public could use the road. The amount of usage by the general public is not controlling under the cases we have cited and therefore the case must be reversed and remanded because of the erroneous findings of fact and resultant conclusions of law by the trial judge.

■ Although the ruling made in the foregoing division is dispositive of the result, we make such further rulings as may be pertinent to the determination of the case on retrial.

The trial judge found that the service road for which the property was sought to be condemned will not aid vehicular traffic on or assist, help or aid anyone using I-75 or the Interstate system, and said road does not serve I-75. He further found as a matter of law that the state may provide accessibility to private property when an Interstate intervenes in an area, if at all, only when a public road has been closed by said Interstate and access is thereby cut off.

These findings of fact and conclusions of law were based upon a misconception of the legal theory involved. Under Code Ann. § 95-1701a (b) (Ga. L. 1955, pp. 559, 560) a local service road is defined as: "any road or street, whether existing at the time of the designation of a limited-access highway or thereafter established, which serves the owner or occupant of any land or improvements abutting a limited-access highway and which gives a means of ingress to and egress from any such lands or improvements." Under Code Ann. § 95-1706a (Ga. L. 1955, pp. 559, 560) the condemnor or any city or county road authority was authorized: "to plan, designate, establish, use, regulate, alter, improve, maintain, and vacate local service roads or streets or to designate as local service roads or streets any existing road or street, and to exercise jurisdiction over service roads in the same manner as authorized over limited-access facilities under the terms of this Chapter, if, in their opinion, such local service road or street is necessary or

desirable. Such local service roads or streets shall be of appropriate design, and shall be separated from the limited-access facility proper by means of any or all devices designated as necessary or desirable by the proper authority." Code Ann. § 95-1706a. The fact that the land in question was not actually contiguous to Interstate 75 did not render it extraneous to the project.

The finding that Cobb County's governing authority had not initiated or passed upon the desirability of the project was not relevant to the issues herein involved since it was not necessary that there be a concurrence of decision between the condemnor and the county. Under Code Ann. § 95-1706a either was empowered to act.

The proposed service road need not serve I-75 or anyone using it, the statute only requiring that it be used to provide access when deemed desirable by the condemnor. There is no restriction that it provide the sole access. Furthermore, as held in *Benton v. State Hwy. Dept.,* 111 Ga. App. 861, 864 (143 SE2d 396), the condemnor had the power to condemn land as "substituted compensation" in order to minimize damages to be paid to condemnees. Here the condemnor introduced evidence that it would be more feasible to provide a service road than to pay compensation for loss of access to abutting landowners. See in this connection *State Hwy. Dept. v. Lumpkin,* 222 Ga. 727, 729 (152 SE2d 557).

■ The remaining enumerations of error are without merit.

The case is reversed and remanded for a redetermination of the issues as to whether the condemnor was using the power of eminent domain for a purely private use and as to whether the condemnor had otherwise acted in a manner prohibited by Code Ann. § 36-1303.

*Judgment reversed. Bell, C. J., and Deen, J., concur.*