A98A1266. MONTANA v. BLOUNT et al.
(504 SE2d 447)

ELDRIDGE, Judge.

Plaintiff-appellant Grant Montana appeals from the grant of a directed verdict in favor of defendants-appellees, the administrators of the estate of Joe Blount. We affirm.

Joe Blount owned a tract of land in Liberty County. In 1961, Blount surveyed the land and filed a subdivision plat (the "Dykes plat") with the Clerk of the Superior Court of Liberty County. The Dykes plat established the boundaries of Pamona Subdivision and clearly delineated individual lots, several roadways, and a lake. The Dykes plat also created a public dedication of any covenants, easements, and restrictions contained in the recorded survey. Such easements showed roads as boundaries on the recorded plat. All grantees who took title subsequently from Blount were subject to such easements and covenants, and the legal descriptions in plaintiff's deed used the lot as shown in the plat to describe his boundaries.

In 1962, Joe Blount conveyed Lot 1 of the subdivision to an entity entitled "Lake McDonald," and thereafter the lot was reconveyed through several other grantees. Montana purchased the property in February 1994. According to his warranty deed, Montana's property was bordered on the southwestern side by Charles Drive. Both the Dykes plat and a 1986 subdivision plat showed Charles

Drive as a 50-foot-wide roadway running from Lake Side Drive to the lake. For many years prior to the conveyance to Montana, Joe Blount and his widow, defendant-appellee Jewel Blount, used the road to reach their lakefront property in order to inspect, repair, and maintain a dam on the lake. Charles Drive was never paved; instead, a dirt road runs the length of the roadway and between numerous trees. However, the dirt road was not co-extensive with the 50-foot-wide easement, as established in both the Dykes plat and the 1986 subdivision plat.

In 1995, one year after acquiring the property, Montana became concerned that Mrs. Blount was preparing to cut down numerous trees within the 50-foot-wide Charles Drive easement. Acting pro se, he filed a petition for declaratory judgment in equity and for equitable relief by permanent injunction in the Superior Court of Liberty County and requested a declaration regarding the nature and extent of his property ownership; he also requested a temporary and permanent injunction to prevent Mrs. Blount from removing any trees within the boundaries of Charles Drive.

During a jury trial on October 3, 1997, Montana admitted the easement but presented evidence that, even with the existing trees, Mrs. Blount was able to use the easement property for access to the lakefront property. Montana contended that the defendants had to prove reasonable necessity for the full use of the easement. The defendants (Mrs. Blount and the other estate administrators) moved for a directed verdict following Montana's case-in-chief.

While the trial court stated that it granted a directed verdict, the trial court in fact took the equity action away from the advisory jury and made findings of fact and conclusions of law as chancellor that the defendants retained an ownership interest in the subdivision property along the lake and that this interest gave them an easement "for ingress and egress over [Charles Drive's] entire width of 50 feet." The trial court concluded also that Montana owned in fee simple the portion of Charles Drive abutting his lot up to the centerline of the road, but such ownership was subject to an easement or right-of-way in favor of the owners of every lot in the subdivision. See *Tietjen v. Meldrim*, 169 Ga. 678 (151 SE 349) (1930). Accordingly, the trial court found that the defendants had "the right and shall be permitted to clear and improve Charles Drive for use as a roadway to the extent of its entire length and its entire 50 foot width." Montana appeals.

1. In his first enumeration of error, Montana contends that the trial court erred in directing a verdict for the defendants since issues of fact involving the necessity of the destruction of the trees exist for the jury.

(a) OCGA § 44-5-39 provides that a grantor, Blount, may create

covenants that run with the land that bind the grantee, Montana. A deed or a plat mentioned in a deed can create a covenant. *Jones v. Lanier Dev. Co.*, 190 Ga. 887 (11 SE2d 11) (1940). Such covenants may accrue to other grantees from the same grantor. *Cawthon v. Anderson*, 211 Ga. 77, 78 (1) (84 SE2d 66) (1954), held: " 'The owner of the fee has the right to sell his land subject to such reservations or restrictions as he may see fit to impose, provided they are not contrary to public policy, and such reservations or restrictions create an easement, or servitude in the nature of an easement, upon the land conveyed for the benefit of the adjoining property of which the grantor remains the owner, and a grantee from the former owner who imposes the restriction is entitled to the same remedy for its enforcement as was [the] grantor.' *Spencer v. Poole*, 207 Ga. 155 (1) (60 SE2d 371) [(1950)]." See also *Grove Lakes Subdivision v. Hollingsworth*, 218 Ga. 443, 444 (128 SE2d 499) (1962); *Lawson v. Lewis*, 205 Ga. 227 (2) (52 SE2d 859) (1949); *Reid v. Standard Oil Co. &c.*, 107 Ga. App. 497, 501-502 (3) (130 SE2d 777) (1963).

" 'When a grantee accepts a deed and enters thereunder, he will be bound by the covenants contained therein, although the deed has not been signed by him.' [OCGA § 44-5-39.] See also *Lawson v. Lewis*, [supra]." *Cawthon v. Anderson*, supra at 78 (3). A deed that reserves an easement in the grantor is the equivalent to an express grant by the grantee. *Champion v. Neason*, 220 Ga. 15 (136 SE2d 718) (1964); see also *Spencer v. Poole*, supra; *O'Barr v. Duncan*, 187 Ga. 642 (2 SE2d 82) (1939); *Atkinson v. Drake*, 101 Ga. App. 485 (114 SE2d 213) (1960). However, all residual rights that the grantor did not convey to the grantee remain in the grantor, except to the extent that the grantor created easement rights in all subdivision owners in such retained rights. The right in the owner of land subject to easement to require the showing of reasonable necessity for use of the easement may be retained or relinquished through the grant of the express easement by the grantor like any other interest in the land.

Where a grantor-subdivider creates a subdivision plat, setting forth lots and streets for the benefit of the grantor and all subsequent grantees and subsequently conveys lots with legal descriptions that are dependent upon such plat, all grantee landowners receive the express grant of an easement of ingress and egress across and between the boundaries of such platted streets or rights-of-way, and such express grant by the subdivider relinquishes the right to require the showing of necessity over such platted streets or roads for the full use of such easement. Such rights and uses by all subdivision owners can be determined in an action in equity. *Tietjen v. Meldrim*, supra at 699. "The fee in the land embraced in the streets became vested in the owners of the abutting lots to the middle of the street, subject to the rights of way over the same in favor of the purchasers

of the lots in this subdivision, for the purposes of ingress and egress to and from their lots. *Hanbury v. Woodward Lumber Co.*, 98 Ga. 54 (26 SE 477) [(1895)]; *Harrold [Bros.] v. Americus*, 142 Ga. 686 (83 SE 534) [(1914)]." Id.

" 'It is established law in this State, and generally, *that nothing passes as an incident to the grant of an easement* but what is requisite to its fair enjoyment. Notwithstanding such a grant, there remains in the grantor the right of full dominion and use of the land, except so far as a limitation thereof is essential to the reasonable enjoyment of the easement granted.' *Georgia Power Co. v. Leonard*, 187 Ga. 608, 610-[611] (1 SE2d 579) [(1939)]." (Emphasis supplied.) *Folk v. Meyerhardt Lodge No. 314 F. & A. M.*, 218 Ga. 248, 249 (127 SE2d 298) (1962). The rights not granted under an easement remain in the landowner. "It is not necessary that he should expressly reserve any right which he may exercise consistently with a fair enjoyment of the grant. *Such rights remain with him because they are not granted.*" (Emphasis supplied.) *Ga. Power Co. v. Leonard*, supra at 611. However, the subdivider-grantor by the recordation of a plat and by dedication of the easements contained in the plat and deeds evidences the intent to relinquish such rights for the benefit of all subdivision grantees.

Where, as in this case, the grantor creates easements by recorded plat and deeds for the benefit of himself and other subdivision grantees prior to conveyance of the lots subject to the easement, such easement rights include full enjoyment of the easements created, and the subsequent grantee was not conveyed the right to require the easement holder to show the "reasonable necessity" for the use of such easement previously expressly granted, because such easements are corporeal hereditaments appurtenant to such subsequently acquired lots. See *Tietjen v. Meldrim*, supra at 700-701.

The deed to Montana did not contain a legal description that gave Montana's property line as the centerline of the platted street; the legal description referred to the recorded plat for the dimension of the lots. See *Tietjen v. Meldrim*, supra at 699. In *Tietjen v. Meldrim*, the boundary line was described as extending up to and along a street shown in a plat. In this case, the plat shows the dimensions of the lot and the legal description references the plat and lot, as well as the adjoining road. Montana's right to the land between the plat lot line and the centerline of the street is derived from common law. Thus, the intent of Blount and Montana as expressed by the recorded plat and deed was that Montana had full dominion, possession, and control over only the platted lot and not the right-of-way, although he had equitable and legal title to land out to the centerline of the easement.

Notably, the cases relied upon by Montana[1] deal with non-abandonment of expressly granted easements through a recorded subdivision plat or the right to remove obstructions in or across the easement in equity actions. All of these cases deal with ingress and egress easements, but none describes the limit of use of such subdivision easements.

Therefore, the recorded subdivision plat and deeds to the subdivision lots, as the intent of the grantor, create a legal rebuttable presumption that "reasonably necessary use," "fair," or "reasonable enjoyment" of the easement requires the full use of the right-of-way or street as platted and dedicated. In this case, Montana's evidence failed to rebut the legal presumption that easement holders did not have a "reasonable necessity" or need for full "reasonable enjoyment of the easement" that encompassed the entire easement right-of-way, and he failed to show grounds to enjoin the clear-cutting of the right-of-way within the sound discretion of the trial court.

(b) A party has no statutory or constitutional right to a trial by jury in an equity action, and the seeking of a temporary and permanent injunction is an action in equity. *Cawthon v. Douglas County*, 248 Ga. 760 (286 SE2d 30) (1982); *Williams v. Overstreet*, 230 Ga. 112 (195 SE2d 906) (1973). Such equitable action for permanent injunctive relief must be distinguished from a legal action for declaratory judgment where interlocutory injunctive relief is sought "in order to maintain the status quo pending the adjudication of the questions," and which would involve a legal issue for jury trial, unless the issues are a matter for equitable relief even under declaratory judgment. OCGA § 9-4-3 (a) and (b). The superior court judge may choose to use a jury to return a special verdict in an equity case with disputed issues of material fact. *Cawthon v. Douglas County*, supra at 763; *Guhl v. Davis*, 242 Ga. 356, 358 (249 SE2d 43) (1978).

Since Montana's action was in equity for the grant of permanent injunctive relief and to determine his equitable rights to the land lying beyond the boundaries of the legal description of his deed to the centerline of the abutting easement for the platted road, and since a jury sits in equity only in an advisory capacity to the trial judge, then it was not error for the trial court either to determine that there existed nothing for which the jury could render an advisory verdict, or to decide to try the case without the jury and find that Montana was not entitled to equitable relief. There existed no conflict in evidence when Montana failed to rebut the legal presumption of "rea-

---

[1] See, e.g., *Ford v. Harris*, 95 Ga. 97 (22 SE 144) (1894); *Schreck v. Blun*, 131 Ga. 489 (62 SE 705) (1908); *Tietjen v. Meldrim*, supra; *Sadler v. First Nat. Bank &c.*, 267 Ga. 122 (475 SE2d 643) (1996); *Smith v. Bentley*, 70 Ga. App. 13 (27 SE2d 252) (1943); *Barnes v. Cheek*, 84 Ga. App. 653 (67 SE2d 145) (1951).

sonable necessity" and "reasonable enjoyment of the easement." *Hanson v. First State Bank &c.*, 254 Ga. 235, 236 (327 SE2d 730) (1985). The trial court made the required findings of fact and conclusions of law for the trial of the issues by the court. OCGA § 9-11-52; *Hanson v. First State Bank &c.*, supra at 236-237.

2. Montana's second enumeration is without merit, as it challenges an alleged ruling of the trial court that was not, in fact, made.

*Judgment affirmed. Blackburn, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JUNE 4, 1998.

Grant Montana, *pro se.*
*Ray C. Smith,* for appellees.