## A00A1191. LANIER et al. v. BURNETTE et al.
### (538 SE2d 476)

ELDRIDGE, Judge.

Edward Lanier and his wife Frances Lanier brought a declaratory judgment action against James M. Burnette, his wife Rebecca W., Robert F. Watkins, Sr., and Marvin K. and Tonia Y. Lockman to determine the width of a granted and dedicated easement, as well as the permitted use. After a bench trial, the Laniers appeal the trial court's judgment. We affirm in part and reverse in part.

1. The Laniers contend that the trial court erred in finding that the easement was 40 feet wide instead of 50 feet wide. We agree.

Watkins was the common grantor of the Laniers, Lockmans, D. M. Norwood, and Burnettes. In 1972, Watkins was conveyed 38 acres in Catoosa County by Grady C. and Elaine F. Jordan, which land he subdivided into smaller tracts. His first conveyance was to Lonnie Roberts, and Watkins granted to him a 40-foot right-of-way across the remainder of Watkins' land; however, Watkins learned that Catoosa County would not accept the road as a public road unless it had a 50-foot easement right-of-way. Watkins corrected this by expanding the easement to 50 feet in his conveyances to the Burnettes and to Norwood, which inured to Roberts' benefit. Watkins testified that it had been his intent to convey an easement for a 50-foot right-of-way to satisfy Catoosa County.

On March 21, 1988, Watkins conveyed to the Burnettes a tract along Georgia Highway 2, which landlocked all the other property except for the 50-foot easement reserved in the deed. The metes and bounds description of the Burnettes' tract goes to the "southeast line

of a fifty (50) foot right of way," but did not include the right-of-way in the conveyance.

Thus, the Burnettes are conclusively charged with notice of and bound by the express grant of a covenant which ran with the land, i.e., the 50-foot right-of-way easement for the benefit of all abutting owners. *Reeves v. Comfort*, 172 Ga. 331 (157 SE 629) (1931). Watkins clearly intended to reserve an express grant of a 50-foot right-of-way in the conveyance to the Burnettes as clearly shown by the March 21, 1988 deed. OCGA § 44-9-1; *Rogers v. Pitchford*, 181 Ga. 845 (184 SE 623) (1936). Thus, Watkins' express reservation of a 50-foot easement in himself and other grantees was the equivalent of an express grant of an easement by the Burnettes. *Champion v. Neason*, 220 Ga. 15 (136 SE2d 718) (1964); *Atkinson v. Drake*, 101 Ga. App. 485 (114 SE2d 213) (1960).

On July 8, 1988, Watkins conveyed 8.56 acres to Norwood, which included a 50-foot easement and which gave his legal description as going to and along a "50 foot right of way," but did not convey the right-of-way land. Watkins owned the land under the 50-foot easement, as well as the servient estate. Norwood conveyed his tract to the Lockmans. Thus, the 50-foot easement became vested in Norwood and his grantee.

On June 21, 1991, Watkins executed a corrective warranty deed to the Burnettes at their request. This deed conveyed legal title in the land to the Burnettes subject to the easement. However, this deed described a 40-foot easement, instead of a 50-foot easement. This deed could not reduce the previously granted 50-foot easement across the Burnettes' land, because such 50-foot easement rights had already vested in the other grantees of Watkins so that Watkins could not take back what he had already conveyed to Roberts, Norwood, and subsequent grantees, i.e., the Laniers. Therefore, the Burnettes' land remained subject to the 50-foot easement despite the corrective deed's language to the contrary.

On April 15, 1993, Watkins conveyed a tract of land to the Laniers along with a 50-foot easement for ingress and egress, which crossed the Burnettes' land. The 50-foot right-of-way easement was "for the benefit of all property owners fronting thereon and not to be considered exclusive to any one owner; but said easement shall be considered permanent in nature to go with the title of either property owner." Watkins told Burnette when he conveyed the land that the conveyance to him had to be subject to a 50-foot easement because of Catoosa County's restrictions, and Burnette agreed to take subject to such 50-foot easement. Thus, any grantee had the right to the same remedies as the grantor in the reserved easement. *Spencer v. Poole*, 207 Ga. 155 (60 SE2d 371) (1950).

The grantor, Watkins, may create covenants that run with the

land that bind their grantee, the Burnettes; either a deed or plat mentioned in a deed can create a covenant that runs with the land. OCGA § 44-5-39; *Jones v. Lanier Dev. Co.*, 190 Ga. 887, 891 (11 SE2d 11) (1940); *Montana v. Blount*, 232 Ga. App. 782, 784 (504 SE2d 447) (1998). Such covenant accrues to the benefit of all other grantees from the grantor whose land abuts upon the easement. *Reid v. Standard Oil Co. of Ky.*, 107 Ga. App. 497 (130 SE2d 777) (1963).

> The owner of the fee has the right to sell his land subject to such reservations or restrictions as he may see fit to impose, provided they are not contrary to public policy, and such reservations or restrictions create an easement, or servitude in the nature of an easement, upon the land conveyed for the benefit of the adjoining property of which the grantor remains the owner, and a grantee from the former owner who imposes the restriction is entitled to the same remedy for its enforcement as was [the] grantor.

(Citation and punctuation omitted.) *Cawthon v. Anderson*, 211 Ga. 77, 78 (1) (84 SE2d 66) (1954). See also *Grove Lakes Subdivision v. Hollingsworth*, 218 Ga. 443, 444 (128 SE2d 499) (1962).

> The fact that other or different restrictions were incorporated in the plaintiffs' deeds, or that their lots might not be subject to the same restrictions as the defendant's lot, would not deprive them of the right to enforce the restriction placed upon the defendant's lot by the former owner and common grantor of both the plaintiffs and the defendant.

Id. at 445. "When a grantee accepts a deed, he is bound by the covenants contained therein even though the deed has not been signed by him." OCGA § 44-5-39; *Cawthon v. Anderson*, supra at 78 (3); *Montana v. Blount*, supra at 784.

Here all grantees from the common grantor-subdivider received the express grant of the easement of ingress and egress by warranty deed and the unrecorded plat, of which the Burnettes had actual notice. *Smith v. Bruce*, 241 Ga. 133, 144 (2) (244 SE2d 559) (1978). Abutting landowners became vested in fee to the middle of the road as a matter of common law, subject to the 50-foot right-of-way over the road in favor of the lots in the subdivision for purposes of ingress to and egress from their lots. Incident to the grant of an easement is the reasonable enjoyment of the easement granted. *Folk v. Meyerhardt Lodge No. 314 &c.*, 218 Ga. 248, 249 (127 SE2d 298) (1962). Where the grantor-subdivider creates easements by deeds and by unrecorded plat for the benefit of himself and other subdivision grantees prior to conveyance of the lots subject to the easement,

such easement rights include full enjoyment of the easements created, and the subsequent grantee received only such rights as the grantor retained. The grantees received the easement as corporeal hereditaments appurtenant to such subsequently acquired lots. *Montana v. Blount*, supra at 785.

The Burnettes' initial deed did not contain a legal description that included title to the 50-foot right-of-way, but described the easement as a boundary. However, as a matter of common law, they had legal and equitable title to the middle of the easement already. *Montana v. Blount*, supra at 785. The subsequent deed from Watkins gave them legal title to the remainder of the 50-foot right-of-way, subject to this original, reserved express easement of a 50-foot right-of-way. Watkins lacked the right or power to reduce to 40 feet what he had already vested in others, i.e., a 50-foot right-of-way. Thus, the corrective deed had the legal effect of conveying only such legal rights that Watkins retained in the 50-foot right-of-way subject to the pre-existing easement created by earlier deeds, including the deed to the Burnettes, that granted the 50-foot easement. Having created a 50-foot, nonexclusive perpetual easement, Watkins could not reduce it. *Smith v. Bruce*, supra at 144. Thus, the trial court erred as a matter of law in holding that the easement was 40 feet and not 50 feet wide.

2. Plaintiffs contend that the trial court erred in finding that the easement for ingress and egress did not include a utility easement. We do not agree.

The grant of an easement impliedly includes the authority to do those things which are reasonably necessary for the enjoyment of the things granted. For an easement for ingress and egress, this means grading, placing gravel, installing and maintaining culverts and bridges, paving, or cutting of trees and brush off the road and shoulder, which are ancillary to the easement granted. *Sadler v. First Nat. Bank &c.*, 267 Ga. 122, 123 (2) (475 SE2d 643) (1996); *Jakobsen v. Colonial Pipeline Co.*, 260 Ga. 565 (2) (397 SE2d 435) (1990); *Roberts v. Roberts*, 206 Ga. App. 423, 425 (2) (425 SE2d 414) (1992). It cannot be said that a utility easement over an ingress and egress easement is a reasonable use "that significantly relate[s] or [is] essential to the object for which the easement[ ] [was] granted." (Citation omitted.) Id.

An all purpose easement both for ingress and egress and utilities clearly and expressly grants each such easement; the deeds in this case gave only an easement for ingress and egress. See *Wiggins v. Southern Bell Tel. &c. Co.*, 245 Ga. 526, 530-531 (2) (266 SE2d 148) (1980); *Upson v. Stafford*, 205 Ga. App. 615 (422 SE2d 882) (1992); see also *Yaali, Ltd. v. Barnes & Noble, Inc.*, 269 Ga. 695, 698 (3) (506 SE2d 116) (1998) (example of all purpose easement language). Since utility companies have the power of eminent domain, then the utility

can acquire all necessary easements through the exercise of such power. OCGA § 22-2-100 (5); *Harwell v. Ga. Power Co.*, 246 Ga. 203 (269 SE2d 464) (1980). Thus, the trial court did not err in finding no utility easement had been granted.

3. Plaintiffs contend that the trial court erred in finding that they had wilfully and intentionally trespassed on the Burnettes' property in constructing a fence, which encroached thereupon, and in assessing damages for such unintentional trespass. We do not agree.

A trespass is any wrongful, continuing interference with a right to the exclusive use and benefit of a property right. See *Dowdell v. Cherry*, 209 Ga. 849 (76 SE2d 499) (1953); *Roughton v. Thiele Kaolin Co.*, 209 Ga. 577, 581 (3) (74 SE2d 844) (1953). The issue of wilful trespass to realty is material only if punitive damages are sought or cutting of timber. *Milltown Lumber Co. v. Carter*, 5 Ga. App. 344, 352 (3) (63 SE 270) (1908). However, the act of trespass must have been a voluntary, intentional act in that it intended the immediate consequences of the act, causing the trespass or invasion, i.e., an intended act as opposed to a negligent act. See *Brooks v. Ready Mix Concrete Co.*, 94 Ga. App. 791, 793 (1) (96 SE2d 213) (1956); see also *Athens Mfg. Co. v. Rucker*, 80 Ga. 291, 295-296 (4) (4 SE 885) (1887).

On March 4, 1998, Randall Compton surveyed the Lanier and Burnette property line for the Laniers and found that the Lanier fence encroached a foot or so to the south of it as an encroachment. The surveyor had difficulty establishing the Laniers' north line and establishing a bearing; he did not use the deed and had to rotate the beginning point to get a bearing. Barry Savage's survey for the Burnettes showed encroachment by the Laniers' fence of 5.3 feet. Lanier had Paul Roberson survey for the fence before he put it up within what Lanier believed was his property line. There was clearly a sharp conflict in the testimony of three registered land surveyors as to what was the Burnette and Lanier property line. Thus, the Laniers did not wilfully trespass.

Contrary to the contentions of the Laniers, the trial court never found that there had been a wilful and intentional trespass; it found that the fence was on the Burnettes' property and ordered the fence removed. The trial court found that the Laniers were liable in damages for trespass, but did not specify if the damages were general, special, nominal, or punitive. There was no evidence to support special damages. The Burnettes neither prayed for nor proved punitive damages. OCGA § 51-12-5.1.

Where there has occurred a trespass, general damages do not have to be proven with any "amount to an absolute certainty" for recovery of such damages. See *Moss & Co. v. Ga. R. & Banking Co.*, 144 Ga. 173, 174-175 (86 SE 550) (1915); see also *Bedingfield v. Brewer*, 220 Ga. 453, 461 (139 SE2d 389) (1964). When there has

been a tortious invasion of the property of another, i.e., trespass, such tortious conduct gives rise to the right to recover nominal damages to vindicate such right. See *Swift v. Broyles*, 115 Ga. 885, 887 (1) (42 SE 277) (1902). As to general damages, "[w]here there is such a wrongful interference with the comfortable enjoyment of property by a person in possession, no precise rule for ascertaining damage can be given . . . ; therefore the jury are left to say what, in their judgment, . . . the defendant ought to pay, in view of the discomfort or annoyance to which the plaintiff and his family have been subjected by the [trespass]." (Citation and punctuation omitted.) Id. at 887-888. Thus, proof that the Laniers erected the fence, an intentional act, that the fence was partially on the Burnettes' land without consent, and that the Burnettes owned the land made the Laniers liable for general or nominal damages; therefore, the trial court did not err in awarding $2,000 in damages, because there was some evidence to support such judgment.

> In bench trials, the findings of the trial court will not be set aside unless clearly erroneous and regard must be given to the trial court's opportunity to assess the credibility of the witnesses. OCGA § 9-11-52 (a). Moreover, the clearly erroneous test is in essence the same as the any evidence rule and appellate courts cannot disturb the findings of fact by the trial court if there is any evidence to support them.

(Citation and punctuation omitted.) *Thomas v. Dept. of Transp.*, 232 Ga. App. 639, 643 (3) (502 SE2d 748) (1998).

*Judgment affirmed in part and reversed in part. Blackburn, P. J., and Barnes, J., concur.*

DECIDED AUGUST 16, 2000.

*Cunningham & Mullinax, William D. Cunningham, Clifton M. Patty, Jr.*, for appellants.

*Watson, Dana & Gottlieb, Dennis D. Watson, Kinney, Kemp, Pickell, Sponcler & Joiner, Richard W. Andrews, Larry J. Campbell, Renzo S. Wiggins*, for appellees.